ROBERT V. MONTAGUE *v.* THOMAS F. GADDIS.

1. ATTACHMENT: IN CASES WHERE THE DEBTOR HAS REMOVED, OR ABOUT TO REMOVE HIS PROPERTY.—The object of the statute allowing an attachment where the debtor has removed, or is about to remove his property from this State, is to

secure to the creditor the collection of his debt in this State, and to provide against the danger of its loss by the removal of the debtor's property to another jurisdiction : and hence, where a debtor, resident in this State, has in his open possession, property of a permanent character and subject to execution, and of value sufficient to pay all his liabilities in this State, and which he does not intend to remove, he is not subject to attachment, because he has removed, or is about to remove, the greater part of his property to another State.

2. SAME: REPLEVIN OF ATTACHED PROPERTY BY DEFENDANT: EFFECT OF.—The replevin, by the defendant, of property seized under an attachment, does not destroy the lien created by the levy : and hence, after such replevin, the attachment still retains its character as a proceeding *in rem.*

3. SAME : SAME : PLEA IN ABATEMENT.—If the issue, on a plea in abatement, traversing the grounds upon which an attachment was sued out, be decided for the defendant, the attachment will be quashed, notwithstanding a previous replevin of the property attached, by the defendant.

ERROR to the Circuit Court of Lauderdale county. Hon. W. M. Hancock, judge.

*George L. Potter,* for plaintiff in error.

*John D. Freeman,* for defendant in error.

HANDY, J., delivered the opinion of the court.

This suit was instituted by attachment issued at the instance of the defendant in error, on affidavit made on the 1st of December, 1857, alleging that the plaintiff in error was " about to remove his property out of this State." The defendant in the court below replevied the property attached, according to the statute ; and at the return term, he filed a plea in abatement under the statute, traversing the allegation that he was about to remove his property out of this State. Upon that issue, a trial was had, and a verdict was rendered for the plaintiff. The defendant excepted to the refusal of the court to give to the jury an instruction asked in his behalf, and filed his bill of exceptions, setting out the evidence before the jury on the trial of the issue, and the instruction asked by him and refused. Subsequently, the case was tried on its merits, and a verdict and judgment were rendered for the plaintiff; and thereupon the defendant sued out this writ of error.

The first error assigned is, the refusal of the court to instruct the jury as asked in behalf of the defendant.

The evidence before the jury upon the issue of the plea in abatement is, in substance, as follows: Reese testified, in behalf of the plaintiff, that he had a conversation with the defendant, in the fall of 1857, on his plantation in Lauderdale county, and that he then understood him to say that he intended to remove his negro property to Louisiana, at the end of the year, or so soon as he saved his crop, and that he intended to take a part of them away before; that he told witness, about the same time, that he was offering his land in Mississippi for sale, and that he would remove his "hands" whether he sold his lands or not. On cross-examination, he stated that he understood him to say, that it was his intention to sell his lands in Lauderdale county, if he could; otherwise, to rent them for the next year. King testified, in behalf of the plaintiff, that in the fall of 1857, defendant told him that he intended to remove all his planting interests to Louisiana, as soon as he could make arrangements to do so, and that he did remove all his hands and personal property, which were then on his plantation in Lauderdale county, to some place unknown to witness; and that after this conversation, witness saw bills advertising defendant's lands in Rankin and Lauderdale counties for sale. Gentry, in behalf of the plaintiff, testified that he was employed by defendant some time in the fall of 1857, to remove a part of his slaves from Lauderdale county, and a part of those in Rankin county, to Louisiana, and that defendant told him that the balance of his hands would be on in a short time, or were then on their way.

It was then proved, on the part of defendant, that, at the date of the attachment, he was, and had been for several years, residing in Rankin county, and had slaves and other personal property there, worth about ten thousand dollars over and above the slaves and property removed; that he had a valuable plantation in Louisiana, where he had removed some of his hands, and that he intended to remove all his field hands there, but did not remove himself nor his household servants; that he then had, and continued to have a tract of land in Rankin county, which, together with his slaves and other personal property, one of the witnesses estimates to be worth not less than fifteen thousand dollars. The defendant testified that he owned at the date of the attachment, property in Rankin county more than sufficient to pay all his liabilities in this State, and that

he did not then intend to remove the same from this State; that this property consisted of seventeen slaves, valuable house-servants and mechanics, and ten hundred and eighty acres of land in Rankin county, and that he estimated this land to be worth ten thousand dollars.

Upon this evidence the defendant asked the court to instruct the jury as follows: "If the jury believe, from the evidence, that the defendant had a large property of a permanent nature, and subject to execution, ample and sufficient to meet all his liabilities, and that the same was in the county of Rankin in this State, at the time the attachment was sued out, which he was not about to remove, they may find for the defendant." The court refused to give the instruction.

We consider the rule stated in the instruction as undoubtedly correct. The object of the statute allowing attachments for debts, is to afford to the creditor a security for his debt, in case the debtor is about to remove his property out of this State, so as to deprive the creditor of the collection of his debt in this State. The principle upon which the statute proceeds is *the danger of loss of the debt by the removal of the defendant's property;* and this reason fails, and the remedy provided by the statute plainly does not apply, where the debtor is removing a part of his property, but does not remove, nor intend to remove, another part of it, subject to the payment of the debt, amply sufficient to satisfy it, and accessible to the creditor's execution, and such portion of his property remains in his possession openly subject to execution. For, when property to such an amount, and so situated, remains in the possession of the debtor, and is not about to be removed from the State, it could not be justly said that the creditor's debt would be in danger of being lost, by the removal of another part of the debtor's property from the State.

The evidence upon the issue made by the plea in abatement tended to show—and it should have been submitted to the jury, by the instruction, to determine the question—that the defendant, at the date of the attachment, owned, and had in open possession, in the county of his residence, and where he had resided for several years, slaves and other personal property worth some ten thousand dollars, which he was not about to remove, and real estate worth about ten

thousand dollars; which property was more than sufficient to pay all his liabilities in this State. If the jury believed this evidence, it is clear that their verdict upon the issue submitted to them, could not properly have been for the plaintiff, upon the principle above stated. But the refusal of the court to give the instruction precluded them from giving any force to this evidence; and the result was, that the attachment was sustained, although the jury might have believed, from the evidence, that the defendant had ample property in Rankin county subject to execution, greatly more than sufficient to pay this debt, and which he was not about to remove.

We are of opinion, therefore, that the instruction should have been given, and for the error in refusing it, that the judgment must be reversed. And this view of the case, renders it needless to consider the errors assigned in relation to the subsequent trial of the case.

It is, however, contended that this error is immaterial, and not available to the defendant, inasmuch as he replevied the property attached, and the case thereby lost its character as a proceeding *in rem*, and became an ordinary action of assumpsit. But the lien of the attachment is expressly retained by the provision of the statute, notwithstanding the replevin, Rev. Code, 375, art. 8; and the 14th article of the same statute authorizes the plea in abatement traversing the truth of the causes upon which the attachment was issued, at the return term of the process. From these provisions it appears, that the replevin was intended as a means of restitution of the property attached, to the defendant, pending the suit, upon bond and security given by him, and that it does not discharge the attachment; but that the defendant has the right by plea to traverse the truth of the ground upon which it was issued, as was done in this case.

The judgment is reversed, and the cause remanded for further proceedings.