B. LOWENSTEIN & BROS. *v.* J. T. BEW & CO.

| 68 | 265 |
| 69 | 802 |

1. ATTACHMENT. *Shipping cotton out of the state.*

Under § 2415, code 1880, subjecting to attachment one who " has removed, or is about to remove . . . his property out of the state," a merchant, though insolvent, who ships cotton to his commission merchant in another state, for sale to pay a debt exceeding the value of the cotton, is not liable to attachment.

2. SAME. *Privilege tax. Code* 1880, § 589. *Evidence.*

In an attachment suit against a merchant it is not competent to prove that he had failed to pay a sufficient privilege tax, in order to show that, being debarred under § 589, code 1880, of suit to collect debts for goods sold on credit, he was disposing of his property in fraud of the rights of creditors.

FROM the circuit court of Leflore county.

HON. J. B. CHRISMAN, Judge.

The appellees, Mrs. Ellen E. Bew and Mrs. Ella S. Bew, composing the firm of J. T. Bew & Co., were merchants doing business at Shell Mound and at Shannondale, Leflore county, Mississippi. They were also engaged in planting in said county. On the 21st day of November, 1889, B. Lowenstein & Bros., wholesale merchants of Memphis, Tenn., sued out an attachment against the parties composing the said firm, in the circuit court of Leflore county, for a debt of $1012.99, then due. In the affidavit for attachment it is averred that the said J. T. Bew & Co. " have removed and are about to remove their property, or a portion thereof, out of this state; that they have property and rights in action which they conceal and unjustly refuse to apply to the payment of their debts; that they have assigned and disposed of, and are about to assign and dispose of, their property and rights in action or some part thereof with intent to defraud their creditors; that they have converted, or are about to convert their property into money and evidences of debt with intent to place it beyond the reach of their creditors."

The writ of attachment was levied on a considerable amount of personal property. Defendants traversed the attachment and a trial was had in the court below, resulting in a verdict and judg-

ment for defendants. Plaintiffs' motion for a new trial being overruled, they prosecuted this appeal.

On the trial of the case it was shown that Chaffe & Powell, of New Orleans, La., were the commission merchants of Bew & Co., who had dealt with them for several years, and were in the habit of shipping to them all the cotton raised on their plantations and acquired in their mercantile business, in order to secure advances of money and merchandise to conduct their planting and mercantile operations. To pay bills, defendants were in the habit of drawing on said commission merchants.

On the 5th day of April, 1889, the defendants, J. T. Bew & Co., gave to Chaffe & Powell a trust-deed to secure an indebtedness recited therein of $34,000, evidenced by promissory notes, given in renewal of a pre-existing indebtedness (secured by a prior trust-deed) and for advances in money and other things during the year 1889, to enable the grantors to carry on their said business. The trust-deed embraced a large amount of real and personal property, and included all crops of cotton, corn and other agricultural products that might be raised or controlled by the debtors during the year 1889; and, among other things, it was stipulated that the debtors should ship to Chaffe & Powell all the cotton they might make or control during that year as rapidly as possible, the same to be sold by the commission merchants on the usual terms; and it was also stipulated that should the debtors fail to ship by the 1st of March, 1890, as much as 360 bales of cotton, and in addition one bale for each $12.50 advanced by the commission merchants in excess of the indebtedness fixed by the notes, the debtor should pay a commission of $1.25 per bale on the deficiency. This deed was duly acknowledged and was placed on record April 6, 1889, and it referred to a similar trust-deed given by the debtors to Chaffe & Powell the previous year. Both deeds were introduced in evidence.

It was shown that the defendants, Bew & Co., had, during the year 1889, shipped out of the state to Chaffe & Powell about 600 bales of cotton, and that, after shipping this cotton, they did not have enough property in this state to pay their debts. But it was

shown, on behalf of defendants, that the cotton was shipped to Chaffe & Powell in pursuance of the trust-deed above mentioned, and that the value of the cotton was less than the indebtedness due to the commission merchants under the trust-deed.

The plaintiffs offered to prove that Bew & Co. had not paid sufficient privilege taxes for conducting their mercantile business for the year 1889. On objection by the defendants, the court refused to admit this evidence.

On the trial it was also shown that the defendants owned a retail liquor saloon at Shell Mound and one at Shannondale, which were run as adjuncts to their stores, but the license for the saloon at Shell Mound was taken out in the name of one Boddie, and that for the other in the name of one Anderson. The testimony for the defense showed that the licenses were taken out in the name of other parties, because both partners in the firm of Bew & Co. were ladies and members of the church, and that J. R. Bew, who managed the business, did not wish to incur their displeasure by using their names in conducting liquor saloons. It was well known that the saloons were owned by Bew & Co., who received the profits of the business.

On the 19th of November, 1889, the defendants Bew & Co. executed a deed conveying to Chaffe & Powell a large amount of real and personal property, including their plantations, mules and implements, and also the stock of goods in their stores, with all fixtures and choses in action due them in connection with the business, and also all cotton before that time shipped to the grantees and not already accounted for by them, as well as all cotton in transit. This property was all incumbered by the trust-deed in favor of Chaffe & Powell. The conveyance recited that it was made in consideration of a large indebtedness due by Bew & Co. to said Chaffe & Powell, and the sum of $6000 cash.

On the day before the sale to Chaffe & Powell, Mrs. E. T. Bew, one of the members of the firm of Bew & Co., sold and conveyed to J. R. Bew, her brother-in-law, a one-fourth interest in a tract of land in Grenada county. The deed recited that the consideration was $500. cash, and it was not shown what was done with

the money. The plaintiffs predicated a charge of fraud on this. The evidence for the defendants tended to show that the interest conveyed was of small value; that the land yielded no income, and that J. R. Bew, the purchaser, paid a fair price for it, and bought the interest because it was a part of the old family home, and he was anxious to prevent its going into the hands of strangers. The testimony further showed that in the sale to Chaffe & Powell the defendants received $6000 cash, which was applied to the payment of debts due by them, with the exception of $100 each, reserved by the defendants to purchase necessary family supplies.

Counsel for appellants urged that certain instructions asked by the defendants were erroneously refused by the court below. These instructions are as follows:—

"2. The court charges the jury that the defendants could not make any contract with Chaffe & Powell to remove any of their property out of this state so as to prevent any creditor from suing out an attachment under the ground of attachment as set forth in the code of Mississippi, unless there was ample other visible property in this state to pay all their debts."

"3. If at a time when J. T. Bew & Co. were insolvent, they purchased any property and placed the title therein in some one else, then such act would in law be fraudulent as against the creditors of J. T. Bew & Co., and ground of attachment regardless of what the real intent of J. T. Bew & Co. might have been."

"4. The court instructs the jury for plaintiffs, that if they believe from the evidence that any interest in the Shell Mound saloon was reserved directly or indirectly, then such reservation would be fraudulent and ground for attachment; and, in determining whether such reservation was made, they may consider the fact, if in proof, that no demand has ever been made on Boddie for any part of the purchase-money."

"5. If J. T. Bew & Co. bought liquors and paid for them with their assets, and placed the said liquors in the name and possession of Geo. Boddie, and had the license and business conducted in his name, then this, in law, was a fraudulent disposition of their assets

and ground for attachment, and the jury should find for the plaintiffs.

" 6. If at a time when J. T. Bew & Co. were insolvent they, acting through J. R. Bew, purchased liquors and other goods, and placed the title thereto in T. S. Anderson, to sell and dispose of in his own name, then such conduct and disposition of the assets of J. T. Bew & Co. would in law be fraudulent and ground of attachment.

" 7. The court instructs the jury that, as it is conceded that the defendants were insolvent in November, 1889, and at that time were shipping their cotton out of this state, the same is ground for attachment, and the jury will find for plaintiffs that the attachment was rightfully sued out.

" 8. The court charges the jury, 1st, that if the jury believe from the evidence that J. T. Bew & Co. were removing or had removed any of their property out of this state, at or before the suing out of the attachment in this case; and that J. T. Bew & Co. did not have at that time sufficient visible property left in this state to pay all their visible debts, then such removal of their property would be ground of attachment, and the jury should find for the plaintiff that the attachment was rightfully sued out."

Some minor questions of fact in addition to those above stated were submitted to the jury, but, as the issues of fact were settled by the verdict in favor of appellees, and as these matters are not specifically mentioned in the opinion of the court, it is not deemed necessary to make any further statement of the case.

*Rush & Gardner*, for appellants.

1. When it was shown that defendants had shipped cotton out of this state to Chaffe & Powell, in New Orleans, it was incumbent upon them to prove that they had left sufficient visible property in this state to satisfy all their debts; failing in this, the attachment should have been sustained on the second ground. *Pickard* v. *Samuels*, 64 Miss. 822; *Stephenson* v. *Sloan*, 65 Ib. 407.

2. It is shown that the saloons, though owned by the defendants, were run in the names of other persons. This subjected their assets to the payment of the debts of these parties. Code 1880,

§ 1300.   Besides, the effect of running the saloons in the name of other parties was to *conceal* the effects of defendants from their creditors.   Fraud in law or in fact, constitutes ground for attachment.   *Roach* v. *Brannon,* 57 Miss. 490.   We submit that the 5th ground of attachment was sustained by the evidence.

3. That the defendants had assigned or disposed of their property with intent to defraud their creditors is shown by the hurried execution and record of the deed from Mrs. E. T. Bew to her brother-in-law *the day before the sale to Chaffe & Powell.*   She received $500 in cash in this transaction besides $100 from Chaffe & Powell, which the evidence does not show was ever applied to the payment of debts.

4. The second instruction for plaintiff, which the court refused, is certainly correct, or else an exception is grafted upon the statute, which this court in *Roach* v. *Brannon* said could not be done. In *Dogan* v. *Cole,* 63 Miss. 153, this court says that the right to attachment cannot be acquired by contract.   By parity of reasoning, parties cannot by agreement set at naught any ground for attachment under the statute.   In *Stephenson* v. *Sloan, supra,* it was announced that the fraudulent intent of the debtor has nothing to do with the right to sue out the attachment.

5. Plaintiffs' third instruction which was refused should have been given.   When the necessary consequence of an act is to defraud, the law presumes fraud.   46 Miss. 309 ; 56 Ib. 142 ; 57 Ib. 490 ; 65 Ib. 492.   The necessary effect of placing the title of property in the name of a third person is to conceal it from the creditors of the owner.

6. The rule announced in plaintiffs' fourth instruction, which was refused, that a secret reservation by a failing debtor in property conveyed by him is a fraud on his creditors, is we think true.

7. Plaintiffs' seventh instruction, which was refused, was based on the decision of this court in the case of *Stephenson* v. *Sloan, supra.* The facts in the case at bar and those of that case are parallel.

8. Plaintiffs' eighth instruction refused by the court is a clear exposition of the second ground of attachment and was drawn with reference to the late decisions of this court.   It is conceded that the

defendants were insolvent, and that they were removing their property out of the state for the purpose of converting it into money, not only to pay Chaffe & Powell, but to draw against as they might see proper.

9. The court erred in refusing plaintiffs' fifth and sixth instructions for the reasons above stated.

10. The court refused to allow plaintiffs' to show that Bew & Co. were doing business without having paid sufficient privilege taxes. The law makes void all contracts in a business so conducted. The effect of conducting the business in this way was to create debts, which could not be collected by law. The necessary consequence of this was to injure and hence defraud creditors.

*A. H. Longino,* on the same side.

Defendants had removed their property from this state and were subject to attachment. The cotton was shipped to Chaffe & Powell to be converted into money, and after paying the commission merchants the defendants were to dispose of the residue by drafts as they saw proper. They were insolvent and had not sufficient property within this state to pay their debts. This was not denied. Under the proof, the attachment was rightly sued out. Code 1880, § 2415; *Pickard* v. *Samuels,* 64 Miss. 827; *Stephenson* v. *Sloan,* 65 Ib. 407; Drake on Attach. §§ 70, 71; Waples on Attach. § 55; *Mack* v. *McDaniel,* 2 McCrary C. C. 198; *Randolph* v. *McCain,* 34 Ark. 696; 12 Fla. 589.

The statute does not make fraud or dishonesty an element of the issue in case of removal of property from the state. Drake on Attach. § 49. Mere removal sustains the issue. Ib. § 50. Our statute admits but one qualification, namely, that the defendant has ample property within the state to answer the demands of creditors. It is no answer that the defendants had obligated themselves to ship cotton to Chaffe & Powell. The statute is inflexible, and a debtor cannot contract away the rights of creditors under it.

*A. H. Whitfield,* on the same side.

1. It seems too clear for argument that the shipment by defendants of six hundred bales of cotton out of the state, without

retaining here sufficient property to pay the debts, subjected them to attachment. The cases of *Stephenson* v. *Sloan* and *Pickard* v. *Samuels* certainly establish that proposition. It is no answer to this that the defendants had obligated themselves by a trust-deed to ship the cotton out of the state. On the contrary, the execution of such an instrument was *itself* sufficient to subject the defendants to attachment. There was no provision in the trust-deed that sufficient property to meet the debts of the grantors was to remain in the state. It is to be remembered that the cotton was shipped to Chaffe & Powell not to pay them alone, but to raise a fund against which defendants were to draw, and did draw generally to pay whomsoever they preferred, their assets being thus placed beyond the jurisdiction of the state.

In addition to the authorities cited by associate counsel, I invite the special attention of the court to the case of *Mack* v. *McDaniel*, 2 McCrary C. C. 198. The reasoning in that case conclusively embraces the precise question here. The case is cited and approved in the latest work on attachment. See Waples on Attach., p. 55, note 6. We submit confidently that the judgment should be reversed on the refusal of plaintiffs' instructions, and that a peremptory instruction to find for plaintiffs should have been given.

2. (Here counsel made an argument on the facts to show that the verdict should have been for plaintiffs.)

3. Was it not error to exclude the testimony showing that Bew & Co. had failed to pay the proper privilege tax? We submit that it was. The necessary consequence of the failure to pay the required tax was to nullify the debts due to defendants in their business and to render it impossible for them or their creditors to enforce payment of the same. Was not this a hindering, delaying and defrauding of the creditors of the firm? Ought not Bew & Co. to be held to have intended the necessary consequence of the act? We are aware of *Hughes* v. *Lake*, 63 Miss. 552, but we do not think it applies here.

*Nugent & McWillie,* for appellees.

1. The court properly refused to admit evidence that Bew & Co. had failed to pay sufficient privilege taxes. It was not

attempted to be shown that they had failed altogether to pay, but that the amount was insufficient. To hold that this was competent, would be to open a broad and trackless field of inquiry ; but the whole question is out of place in this discussion. The proof offered could have no bearing on the issues joined in the attachment proceeding, which related entirely to the *intent of the defendants,* while the penalty of the statute for the failure to pay a sufficient privilege tax rests on the *facts recited in it, regardless of intent.* On this point we refer the court to *Hughes* v. *Lake,* 63 Miss. 557.

2. The court did not err in refusing to instruct the jury that if the defendants were insolvent in November, 1889, and had removed or were removing their property out of this state, without leaving visible property here to pay all debts, such removal would be a ground of attachment. By the literal reading of the statute an attachment would be sustained on proof of the removal of any property, but there are exceptions recognized, as where the removal is only temporary ; and where a sufficiency of property remains to pay all debts ; and again where the debtor is secured by a mortgage or otherwise ; and also where the property removed is exempt. The prevailing idea is that there must be such removal as will work *injury to the creditor complaining.* *Montague* v. *Gaddis,* 37 Miss. 453 ; *White* v. *Wilson,* 10 Ill. 21 ; 17 Ib. 33 ; 63 Cal. 75 ; 12 Fla. 589 ; 46 Ala. 648.

In *Pickard* v. *Samuels,* 64 Miss. 822, this court says that the exception before recognized in *Montague* v. *Gaddis* is founded upon the fact that the creditor was not placed in any worse condition by the removal, and that *a removal which does not jeopardize the rights of creditors is not a ground of attachment.*

The case at bar is very different from that of *Stephenson* v. *Sloan,* 65 Miss. 407, cited by opposing counsel. Here the debtors derived from the commission merchants all the advances necessary to carry on their business, including the means to pay such debts as that of the plaintiffs. They had given a trust-deed on all their property to secure these advances, including a balance brought over from the previous year, which was secured by a similar trust-deed. It was stipulated that the debtors should ship all their cotton, and as

rapidly as possible.   The trust-deed was put on record and affected plaintiffs and all others with notice of its provisions.   Plaintiffs could not be injured.   They would probably regard it as quite a neat thing, after receiving payment of bill after bill out of the money thus advanced by Chaffe & Powell, to attach Bew & Co. on the ground that they had shipped cotton to cover such advances.   It is not pretended that the contract of defendants to ship cotton to Chaffe & Powell was an illegal one, nor does such a view find countenance in any respectable decision.   *The contract being valid, its performance did not create a ground of attachment.*   The cotton shipped to Chaffe & Powell was covered by their trust-deed, and its removal from this state did not injure the general creditors of Bew & Co.   If the strict letter of the statute is to prevail, then Chaffe & Powell themselves could have attached Bew & Co.   On this point we refer the court to *Russell* v. *Wilson*, 18 La. 367, and *Hurd* v. *Jarvis*, 1 Pinney (Wis.), 475.

It is understood that cotton is to be shipped to the markets and mills of the north and Europe, but primarily to satisfy the demands of the non-resident commission merchants, who advanced the money to produce it.   It is the policy of our law to protect loans made to enable planters to cultivate their lands.

3. Bew & Co. shipped no cotton except to the beneficiaries under the trust-deed who were purchasers *sub modo* the moment the cotton reached the hands of the carrier for transportation to New Orleans. *Pearson* v. *State*, 66 Miss. 510.

A delivery to the carrier in the usual course is deemed *prima facie* a delivery to the consignee.   3 Barb. (N. Y.) 389 ; 39 N. Y. 34 ; 52 Ib. 262 ; 4 Harr. (Del.) 448 ; 4 Martin (La.), 304 ; 38 Ill. 354 ; 11 Allen, 80 ; 31 Conn. 281 ; 3 Am. & Eng. R. R. Cas. 256 ; 9 Ib. 85.

4. There was no concealment in taking out the license for the saloons in the name of other parties.   The members of the firm of Bew & Co. were ladies, and the manager of their business did not wish to displease them by procuring license in their names.   This was never a secret from the business world, and Bew & Co. received

everything in the way of profit that the saloon business realized. There was no concealment whatever about this business.

5. (Counsel here made an argument on the facts of the case, to show that the defendants had not been guilty of fraud, and that there was no ground for suing out the attachment.)

COOPER, J., delivered the opinion of the court.

The controlling question in this case is whether an insolvent merchant residing in this state subjects himself to attachment by shipping to his commission merchant in another state cotton, to be there sold, and the proceeds applied to the payment of a debt due to such commission merchant, the debt exceeding the value of the cotton so shipped. The circuit judge instructed the jury that such circumstances were not ground for attachment under the second clause of § 2415 of the code, which subjects to attachment one who " has removed or is about to remove himself or his property out of this state," and we think correctly so ruled. A literal construction of the statute would, it is clear, subject one to attachment under the circumstances named ; but it was settled at an early day in this state that the "removal" of person or property within the meaning of the law must be such as to impair or jeopardize the remedy of creditors for the collection of their debts. It is, of course, impossible to specify in advance exactly what facts would place a defendant within or without the operation of the statute, but the principle which controls is distinct and simple. The difficulty is the common one of applying it to the facts. An examination of the decisions in this state and some of those elsewhere will illustrate the uniformity with which the courts have adhered to the principle of protecting the rights of creditors, and limited the language of statutes to this purpose and end. In *Montague* v. *Gaddis*, 37 Miss. 453, the debtor was about to remove a considerable portion of his property from the state, but retained in it ample property subject to execution for the payment of all his debts. The trial court held that he was not subject to attachment, and examining the subject, the court said : " The object of the statute allowing attachments for debts is to afford the creditor a security for his

debt in case the debtor is about to remove his property out of this state, so as to deprive the creditor of the collection of his debt in this state.    The principle upon which the statute proceeds is the danger of loss of the debt by the removal of the defendant's property ; and this reason fails, and the remedy provided by the statute plainly does not apply, when the debtor is removing a part of his property, but does not remove or intend to remove another part of it, subject to the payment of the debt, amply sufficient to satisfy it, and accessible to the creditor's execution, and such portion of his property remains in his possession openly subject to execution. For when property to such an amount, and so situated, remains in the possession of the debtor, and is not about to be removed from the state, it could not be justly said that the creditor's debt would be in danger of being lost by the removal of another part of the debtor's property from the state." In *Myers* v. *Farrell*, 47 Miss. 282, and *Pickard* v. *Samuels*, 64 Ib. 822, the principle of *Montague* v. *Gaddis* is reaffirmed. In *Stephenson* v. *Sloan*, 65 Miss. 407, there was a delivery by the debtor of certain cotton to the creditor, to be by him shipped out of the state and sold, and out of the proceeds of sale to pay the debt due, the balance to be returned to the debtor. The debt there was less than the value of the cotton ; and since the transaction was in effect to send the property beyond the state to be converted into money, a part of which was to return to the debtor, it was held ground for attachment. *Haber* v. *Nassitts*, 12 Fla. 589, rested upon facts almost identical with *Montague* v. *Gaddis*, and the same conclusion was reached as in that case. *Mack* v. *McDaniel*, 2 McCrary, 198, was a case in which an insolvent merchant converted his property into cotton, and shipped the same out of the state for sale.   This was held ground for attachment. That case, it will be seen, is similar in its facts to *Stephenson* v. *Sloan*, the controlling facts in each being that the sending of the cotton beyond the state was but a step in the process of converting it into money to be returned to the debtor, whereby it would be withdrawn from seizure under execution.   We cannot yield our assent to the suggestions of counsel that, since it is lawful for an insolvent debtor to convert his property into money in this state in the

usual course of trade, and without a fraudulent purpose, he may also, in like usual course of business, remove it beyond the state, to be there converted into money to be returned to him in this state. The statute regulating attachment is materially different in respect to the two transactions. A debtor, though insolvent, may lawfully convert his property into money or evidences of debt in this state, unless his intent in so doing is to place it beyond the reach of creditors. It is only the fraudulent conversion of property into money in the state that subjects the debtor to attachment. On the other hand, the statute expressly declares that the removal of property from the state is ground of attachment. It is not necessary that the removal shall be with a fraudulent purpose, for the mere removal either withdraws the property from subjection to the claims of creditors, or imposes on them the necessity of going without the state to subject it. It cannot be permitted a man to do what the law forbids to be done, because, either of a course of business or of the inconveniences which may result from a conformity to law. But, as was forcibly said by Caldwell, J., in *Mack* v. *McDaniel*, 2 McCrary, 198, it does not lie with an insolvent to claim the benefit of a course of business applicable to solvent merchants. If insolvent merchants are accustomed to send their cotton out of this state to be converted into money to be thereafter returned to or controlled by them, it is a course of business that subjects each of them to attachment. A multitude of precedent wrongs cannot justify another and later one. But, as we have said, it is not every removal of property from the state that will warrant an attachment. A temporary removal of property in good faith, really and apparently, a removal of exempt property, or the removal of a portion of one's estate, leaving in the state ample visible property to answer the demands of all creditors, while within the letter of the statute, would not be covered by it, for the reason given in *Montague* v. *Gaddis*, that it applies only to such removals as impose danger of loss to creditors. To subject a debtor to attachment under the circumstances of the present case, would be to impose a penalty upon him for doing what the law approves. The cotton shipped by the defendants was of far less value than

the debt it was consigned to pay. No creditor could by possibility be injured by the fact that it was to be sold beyond the state, and its proceeds there applied to debts equally binding upon the debtors as were those of other creditors. If the shipments had been for the purpose of conversion into money to be returned to the debtors, thereby putting it within their power to pay it to creditors or to convert it to their own use, there would have been danger of loss to creditors, as in *Stephenson* v. *Sloan*, and this danger of loss would have brought the transaction within the condemnation of the statute. In the absence of such conditions, the principle announced in *Montague* v. *Gaddis*, 37 Miss. 453, controls, and the court below was correct in so ruling. We consider it unnecessary to say more in reference to the other errors assigned than that we have considered them and find nothing of error therein.

*The judgment is affirmed.*