## A. L. CROW v. LEMON & GALE COMPANY.

ATTACHMENT.   *Removal of property out of state. Shipment of cotton.   Case.*

> The shipment, by an insolvent debtor in this state, of cotton to a commission merchant in another state, not to pay a debt to him, but to create a fund to be drawn against or used by him for the payment of debts to others than the consignee, is a removal of property out of this state within the meaning of ¿ 2415, code 1880, and subjects the debtor to attachment.   *Stephenson* v. *Sloan,* 65 Miss., 407, cited.   *Lowenstein* v. *Bew,* 68 *Ib.,* 265, distinguished.

FROM the circuit court of Tallahatchie county.
HON. R. W. WILLIAMSON, Judge.

The case is stated in the opinion.

*William C. McLean,* for appellant.

I maintain that there is no evidence to sustain the granting of the peremptory instruction. The court gave it for the single reason that the defendant had shipped property out of the state. It is lawful for a debtor to ship his property out of the state to his creditors, to be sold and proceeds applied to the payment of debts. None of the proceeds of the cotton was returned, or intended to be returned, to the debtor. He was applying the cotton to the payment of his debts.

In *Lowenstein* v. *Bew,* 68 Miss., 265, it was insisted by appellants that the shipment was not for the purpose of paying the assignees alone, but to raise a fund against which debtors might draw, and did draw, generally to pay creditors. The court, however, did not sustain this view, but held that the disposition of the property was not unlawful. It was perfectly lawful for Crow to draw drafts on Craig & Co., and have them paid in New Orleans, upon the promise that cotton would be shipped. It is conceded that the value of the cotton shipped was less than the amounts due the parties paid from its pro-

ceeds. The question should at least have been submitted to the jury, under proper instructions from the court, to determine whether there was such a removal as the statute condemns.

*Eskridge & McCorkle,* on the same side.

There was a direct conflict between the books of Crow and his own testimony as a witness, in reference to when the shipments of cotton were made, whether before or after Crow became indebted to Craig & Co. The court, by its peremptory instruction, invaded the province of the jury. The question should have been submitted to the jury. *Swan* v. *Express Co.,* 53 Miss., 286; *Whitney* v. *Cook, Ib.,* 551; *Carson* v. *Leathers,* 57 *Ib.,* 650; *Bernheim* v. *Dibbrell,* 66 *Ib.,* 199; *Lowenstein* v. *Powell,* 68 *Ib.,* 73.

At the time of the shipment, Crow intended to devote part of the proceeds of sale to pay other debts, and the arrangement was a mere matter of convenience. Every dollar was devoted to the purpose of paying debts. The case does not, therefore, come within the rule in *Stephenson* v. *Sloan,* 65 Miss., 407, but within the rule announced in *Lowenstein* v. *Bew.*

*Stone & Lowry,* for appellee.

The shipment of the cotton was such a removal as authorized attachment. In *Lowenstein* v. *Bew,* the test was said to be, whether the removal was such as would impair the remedy of creditors for the collection of their debts in this state. The only contingencies where the removal out of the state would not justify an attachment, are when sufficient property is left, subject to execution, to pay all debts of the shipper, and where the property is shipped to pay some just and pre-existing debt. This case comes within neither exception. It is obvious, from the railroad receipts, that appellant shipped cotton to Craig & Co. before he became indebted to them. It is not lawful to ship cotton out of the state to be drawn

against to pay debts generally.   The peremptory instruction
was proper.

COOPER, J., delivered the opinion of the court.

The appellees sued out an attachment against the estate of
the appellant on these grounds :

1.  That defendant had removed or was about to remove
his property out of this state.

2.  That he had converted or was about to convert his prop-
erty into money or evidences of debt, with intent to place it
beyond the reach of his creditors.

The defendant traversed the truth of the grounds of at-
tachment, and, upon the trial of this issue, the court in-
structed the jury to find for the plaintiff.   This action of
the court is the error here assigned.

It is said by counsel that the peremptory instruction was
given by the court because of the evidence touching the first
ground of attachment.   If it was correctly given as to that
part of the issue, it will be unnecessary to consider other
questions argued by counsel, for one lawful and sufficient
cause of attachment is as good as many.

The evidence abundantly establishes the facts that the de-
fendant, being insolvent, shipped out of this state, to his com-
mission merchants, in the cities of Memphis and New Or-
leans, large quantities of cotton ; indeed, the defendant ad-
mits that he did so, but contends that, under the circumstances,
he did not, by making such shipments subject himself to at-
tachment, for the alleged reason that they were made in the
usual course of trade and in payment of debts due by him to
such merchants, which debts were in excess of the value of
the cotton.

The controversy on this question is limited in the argument
to the shipments made to the firm of Craig & Co., of New
Orleans, La.   We are not, however, clear that the material
evidence in reference to the issue is so limited.

The books of the defendant and of the railroad company

by which the cotton consigned to Craig & Co. was carried, show that some of that cotton was shipped before the defendant became indebted to Craig & Co. This the defendant, who was examined as a witness in his own behalf, admitted, but stated that his books were not correct, and that, in fact, he shipped no cotton to that firm until after he was indebted to them. However this may be, it does appear from the defendant's own testimony that some part of this cotton, consigned either to Craig & Co., or some of the other non-resident firms, was not shipped and applied to the payment of debts due by the defendant to the consignees. The defendant was being examined by his counsel, touching these shipments, when the following questions were asked and the following answers given thereto :

*Ques.* " What became of the proceeds of the sale of that cotton ? "

*Ans.* " Well, it went to pay my debts to various parties."

*Ques.* " The parties to whom you shipped—the consignees ? "

*Ans.* " Yes, sir; to them, and to other parties. I drew on them to pay it."

By this testimony, it appears that some portion of the proceeds of the cotton shipped beyond the state was not applied to the debts due the consignees, but was, upon the order of the defendant, applied to the debts of other creditors, or, in other words, was disposed of by the defendant at his will. This was clearly such removal of his property by the defendant without the state as to subject him to attachment at the suit of other creditors.

It is supposed by counsel that the case of *Lowenstein* v. *Bew*, 68 Miss., 265, is authority for the proposition that one, though insolvent, may send his property beyond the limits of this state without subjecting himself to attachment, if the purpose in so doing be to pay his debts from the proceeds of the sale thereof, and such property is sold, and the proceeds so applied. No such rule was declared in that case. It was

there decided that one, owing a debt *to the consignee* greater than the value of the cotton, and who consigned the cotton to such creditor to be sold, and the proceeds applied to the debt, was not subject to attachment, and this for the manifest reason that no other creditor could, by possibility, be thereby injured. But there is a broad difference between what was done by the debtor in that case and this. Bew shipped his cotton to his creditor in payment of the debt he owed him. The sale by the creditor was but for the purpose of reducing the property to money, to determine the amount for which the debtor should have a credit on the debt. In this case, Crow shipped his cotton to his creditor, not in payment of his debt, but to create a fund against which he might draw to pay such other debts that he owed as he might elect to pay, and did, in fact, so apply a part of the proceeds of the sale.

If a debtor may thus remove his property out of the state, controlling and directing its future application, he may, at his will, defeat creditors entirely or send them beyond the jurisdiction of this state in search of his property, and this is precisely what the law intends to prohibit.

The facts of this case bring it within the rule of *Stephenson* v. *Sloan,* 65 Miss., 407.

*The judgment is affirmed.*