GENS & TIEDE, Respondents, v. HARGADINE, McKITT-RICK & COMPANY, Appellants.

### Kansas City Court of Appeals, January 29, 1894.

| 56 | 245 |
|----|-----|
| 67 | 232 |
| 56 | 245 |
| 69 | 513 |
| 56 | 245 |
| 84 | 99 |
| 84 | 520 |
| 56 | 245 |
| 99 | 1672 |

1. **Fraudulent Conveyances; INTENT: ATTACHMENT.** To sustain an attachment it is not necessary that the defendant therein conveyed his property with the intent to hinder and delay his creditors, but merely that that was the effects of his conveyance; but in order to set aside a conveyance as fraudulent on the ground that it hindered or delayed creditors, it must be shown to have been made with such intent and it is proper to so instruct the jury.

2. ———: SALE TO PAY DEBTS: DEMURRER TO EVIDENCE. Whenever in good faith a sale is made, even by an insolvent, for the purpose of paying creditors, the sale is valid, whether such sale be for cash or on time and even though it have the effect to hinder or delay creditors, and in this case a demurrer to plaintiff's evidence was properly overruled, and the case is distinguished from *Seger v. Thomas,* 107 Mo. 635.

3. ———: GENERAL CREDITORS: ATTACHING CREDITORS. General creditors cannot attach a conveyance on the ground of its hindering or delaying them; nor does the attachment statute confer such power on a creditor who wrongfully sues out an attachment which is on trial abated, and if he afterwards obtain judgment on his demand, such judgment will not protect him from damages inflicted on the debtor or his vendee, in the enforcement of his wrongful attachment.

4. **Settlement**: DIFFERENT PROPERTIES: SAME TRASACTION: SPLITTING CAUSE OF ACTION. A party claiming damages which, though arising from the same wrongful act, are injuries to different properties conceded as to one and disputed as to the other, can settle the one not disputed without barring himself of a recovery on the other; and there is, in such case, no room for the application of the doctrine in relation to splitting causes of action.

5. **Res Adjudicata**: DAMAGES TO ATTACHMENT: DEFENDANT V. DAMAGES TO HIS VENDEE. Plaintiffs as assignee of their former vendee brought trespass for wrongfully seizing the vendee's goods under an attachment against the plaintiffs. *Held*, the claim was not *res adjudicata* and barred by a former action by the plaintiffs on the attachment bond for damages sustained by plaintiffs as defendants in the wrongful attachment, especially without evidence showing the matters claimed in the subsequent suit was included in the former one.

*Appeal from the Osage Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

AFFIRMED.

*Ryors & Voshall* for appellants.

(1) The court should have rendered judgment for the defendants on the pleadings. The first two paragraphs in answer to petition set up complete defenses in themselves, and the replication of defendants thereto admits the facts stated in said paragraphs and fails to allege sufficient facts to constitute in law an avoidance. The basis of the suit is a claim for damages, an uncertain and disputed amount, and the principles of law applicable to this case are the principles laid down in cases following: *Mateer v. Railroad*, 105 Mo. 320; *Hinkle v. Railroad*, 31 Minn. 434. (2) And, further, appellants say that the last paragraph in answer of appellants also sets up a complete and separate defense in itself, and that by the replication of respondents thereto all the facts set up in said last paragraph of said answer are expressly and necessarily admitted and the facts pleaded

in said replication are insufficient at law to constitute any defense or avoidance. That defendants do not, in their reply, deny the gist of the matter set up in the said last paragraph of said answer, to-wit, "that, at the time of bringing the suit on the attachment bond, plaintiffs were the owners of the present claim and could have embraced this suit in the same suit set up in said last paragraph of answer of defendants." *O'Neal v. Brown*, 21 Ala. 484; *Griffin v. Hodshire*, 21 U. S. Rep. 741; *Moore v. State ex rel.*, 14 W. Rep. 317; *Bellinger v. Craigue*, 31 Barb. 534; *Davis v. Tallcat*, 2 Kern. 184; *Marriott v. Hampton*, F. T. R. 265. (3) The court should have sustained the demurrer to the evidence offered by defendants. *Hinkle v. Railroad, supra; Mateer v. Railroad, supra; Seger's Sons v. Thomas Bros.*, 107 Mo. 635.

*J. W. Zevely* and *Silver & Brown* for respondents.

(1) Plaintiffs are entitled to recover on the facts stated and proved. *Clark v. Brott*, 71 Mo. 473; *Gens Tiede*, 45 Mo. App. 38. (2) Instructions numbered 7, 7½ and 8 were properly given. "An embarrassed debtor may make sale of his property which he deems advantageous, to enable him to raise the necessary means for paying off his creditors, and to prevent its sacrifice at a forced sale under execution, and for this purpose the law recognizes his right to sale for cash or on time." *Dougherty v. Cooper*, 77 Mo. 531, and cases cited; *Singer v. Goldenberg*, 17 Mo. App. 365; *Saddlery Co. v. Werner*, 24 Mo. App. 534; *Sellers v. Barley*, 29 Mo. App. 174. Actual fraud must be proved, not conjectured. *Priest v. Wray*, 87 Mo. 16; *Henderson v. Henderson*, 55 Mo. 554; *Garesche v. McDonald*, 103 Mo. 7; *Hausman v. Hope*, 20 Mo. App. 193; *Funkhouse v. Lay*, 78 Mo. 458.

ELLISON, J.—This is an action of trespass for the seizure and sale, under attachment, of a stock of merchandise, the property of the firm of Culberson & Hall. The cause of action was assigned by Culberson & Hall to plaintiffs, defendants in the attachment suit. On trial below plaintiffs obtained judgment and defendants appeal.

The case was heretofore before this court and will be found reported in 45 Mo. App. 38, where a statement of the origin and general nature of the transaction preceding the commencement of the present action, will be found. When the cause was remanded there was an amendment of pleadings all 'round and a retrial has developed some additional and some materially different theories from those advanced at the first trial.

Defendants introduced no evidence and submitted but one instruction, that being a demurrer to the evidence. The evidence showed the stock of goods sold by the plaintiffs to Culberson & Hall to have been worth more than $3,000. That the claim upon which these defendants instituted their attachment was for $742, the whole stock being seized. It further appeared that on a trial of the plea in abatement the attachment was dissolved. Culberson & Hall paid for the stock $300 in cash and giving one note for $200, due in thirty days and one note for $2,789.77, due in twelve equal monthly installments.

The question whether these plaintiffs made the sale to Culberson & Hall with intent to hinder, delay or defraud their creditors was submitted to the jury under instructions. This is complained of by defendants; they, in effect, contending that if the effect of the sale was to hinder and delay creditors, then it was a fraud upon them, regardless of the question of intent, and

that in submitting the question of intent a burden was put upon them which was not justified by the law. In support of this contention we are referred to *Noyes v. Cunningham*, 51 Mo. App. 194 and cases cited. Those cases are not applicable to that class of cases to which the present action belongs. Those cases are attachment suits. On plea in abatement to an attachment, it is held in *Noyes v. Cunningham*, and also in *Reed v. Pellitier*, (28 Mo. 173), that intent is not required to be shown, since it is not required by the attachment law— the attachment law being that, if the debtor fraudulently conveys his property *so as* to hinder and delay his creditors, an attachment might be laid upon his property. A fraud (in law) may exist without an intent, and intent is very properly held not to be a necessary element under the attachment statute. But this action is not governed by the attachment law.

Defendants' answer alleges a conspiracy between these plaintiffs and Culberson & Hall for the purpose of hindering, delaying and defrauding the creditors of these plaintiffs. And that "to carry out said fraudulent intent the said Gens and Tiede. made a pretended sale of the goods, wares and merchandise" in question. The answer then proceeds to state in detail the general plan of the conspiracy, thus alleged to have been entered into, whereby the creditors of these plaintiffs were to be cheated, defrauded, hindered or delayed. A reply was filed by plaintiffs which tendered an issue on these allegations. The cause was thus thrown under the statute of fraudulent conveyances, section 5170, Revised Statutes, 1889, and the question of intent was properly made to form a part of the instructions given. It is true enough that where an act is such as to inevitably defraud, hinder or delay creditors, he who commits it would be held or presumed, under this statute, to have intended the inevitable consequence of

the act; but this would not eliminate the question of intent. A man on trial for crime is presumed to intend. the necessary and inevitable consequence of his act, and yet it would not be suggested that the question of intent did not form a part of the hypothesis of an instruction. There probably could be no case found including an issue such as made by the answer in this case, where the question of intent was not submitted to the jury, unless the evidence was so clear as to leave but one conclusion to be drawn therefrom; in which event the court would declare the judgment of the law upon the transaction.

But defendants submitted an instruction in the nature of a demurrer to the evidence which was. refused, which if given would have declared, as a matter of law, that the sale made by these plaintiffs was fraudulent and void. This demurrer amounted to a declaration that there was but one conclusion to be drawn from the evidence and as such it was altogether improper. Conceding plaintiffs to have been insolvent at the time of the sale, yet the testimony shows that the object in selling was for the purpose of paying their creditors. The sale was partly for cash and the balance on credit evidenced by notes, one payable in. thirty days, the other in twelve equal monthly installments, the last installment falling due in one year. The cash payment and the notes, together with $800 worth of book accounts, were turned over to an attorney with directions to pay out the cash to creditors and to collect the accounts and the monthly installments of the note as well as also the smaller note and pay over to creditors. The law is, that whenever, in good faith, a sale is made, even by an insolvent, for the purpose of paying creditors, the sale is valid. *Singer v. Goldenberg*, 17 Mo. App. 565–568; *Knapp v. Joy*, 9 Mo. App. 47. It is true that here there was credit given. But it is

declared to be the law in *Dougherty v. Cooper* (77 Mo. 528), that an insolvent debtor may sell "for cash or on time" if for the honest purpose of paying his debts, notwithstanding such sale has the effect to hinder or delay creditors, the court adding, that to render the sale invalid there must have been a design entertained by the debtor to hinder or delay his creditors. It is probable that the authorities which are cited to sustain this statement of the law by the court, have reference to assignments for the benefit of creditors, which have a statutory sanction, and the scheme of which neces- sarily imposes some delay and hinderance; and the result of which is to clothe the assignee with trustee powers, involving a limited discretion as to a reasona- ble credit under the ultimate control of the courts. But the decision was made in a case involving the validity of a sale to one not a creditor and we must accept it, as the trial court evidently did, as authority.

We are, however, cited to the case of *Seger v. Thomas*, 107 Mo. 635, as, in effect, overruling *Dougherty v. Cooper*. The opinion does not profess to do so, and since we consider the case at bar entirely distinguish- able from *Seger v. Thomas*, we need to do no more than state the point of difference. In that case there was a credit of one year evidenced by the negotiable note of the purchaser for the surplus over and above the amount of his debt, which was kept by the debtors, thus "putting it in the power of the members of the firm to dispose of the note, which was negotiable, to an innocent purchaser, and thus effectually deprive the creditors of this surplus absolutely," the debtor being allowed, as the court proceeds to illustrate by a quotation from a case in the supreme court of Texas, to place that portion of the property beyond the reach of other creditors and leave the vendor free to deal with it as his own. In the case before us the vendors,—

debtors—applied the entire proceeds of the sale to the use of their creditors, by turning it over to the control and possession of a third party with directions to dispose of it—the cash immediately and the collections as fast as they could be collected. Not only this, but the debtors, in addition, turned over to the same party for the same purpose, a large amount of collectable accounts, which were in fact collected. The note in the *Seger case* was due in one year, negotiable and left in the hands of the debtor. Here the notes were, as stated, turned over to a third party for the creditors, one due in thirty days, and the other in twelve equal monthly installments, thus being available in discharge of the claims of creditors sooner, in all probability, than such claims could have been reduced to judgment and realized upon by process of law. The delay incident to this sale and disposition of the proceeds was less, at least not longer, than the "laws delay."

But if we are wrong in the foregoing, there yet appears an insurmountable barrier to such defense on the part of the defendants. The sale *per se* was a valid sale—a valid transfer of the title to Culberson & Hall. It was only void as to creditors and purchasers—it was subject to be avoided by them. By the word creditors, however, is not meant general creditors, or creditors at large, as they are sometimes designated. Such a creditor has no right to interfere with, or complain of, the disposition of the debtor's property. *Martin v. Michael*, 23 Mo. 50; *Thias v. Siener*, 103 Mo. 323; *Spitz v. Kerfoot*, 42 Mo. App. 77; *Crim. v. Walker*, 79 Mo. 335. In the case first cited it was held that an attaching creditor was not such an one as could question the sale—that he was no more, before judgment, than an ordinary creditor. Since that case, the statute has been altered so as to allow this privilege to any attaching creditor. Revised Statutes, 1889, section

Gens & Tiede v. Hargadine & Co.

571.   Under this statute then, it would be proper to say that a fraudulent sale by the debtor so as to hinder or delay his creditors, though valid as between vendor and vendee, would be invalid as to an attaching creditor.   But the statute evidently does not contemplate a *wrongful* attaching creditor.   If it did, it would be conferring a privilege upon a wrongdoer and offering an inducement to wrongdoing.   If, therefore, the attaching creditor fails to maintain his attachment he ought necessarily to thereby be bereft of the statutory privilege.   If the attachment is dissolved on trial of the plea in abatement, it amounts to an adjudication that it should never have been instituted, and the *status* of the attachor and attachee is, so far as this question is concerned, as though no attachment had been obtained.   The dissolution releases the property and annuls the statutory proceedings.   Now, in this case the attachment was wrongful and was dissolved on a trial of the plea in abatement, as the case shows; indeed it is so shown by defendants in their answer.   They are, therefore, not attachment creditors and have no privileges as such.

Defendants did, however, as plaintiffs in that case, obtain a judgment against the plaintiffs here for their claim; and did thereby become judgment creditors. But it must be borne in mind that before they became judgment creditors all of the wrong had been perpetrated and all the damage, here sued for, had accrued.   The goods had been seized—four or five times in value more than the debt sued for.   The sale had taken place under order of court, and the property sacrificed.   The tort then, was committed and the injury inflicted without justification or excuse, since the grounds assigned for it and which permitted it to be done, were false as was determined by the trial of the plea in abatement.   The fact that these defendants

afterwards became judgment creditors affords no expiation for such wrong. A creditor cannot seize and practically destroy his debtor's property with impunity, unless he be backed by the rightful process of a court. Defendants cannot be shielded from the consequence of their wrongful act by reason of their having, subsequently, obtained a judgment for their debt. A *prior* judgment would only entitle them to *process* whereby they could subject the debtor's property. A prior judgment would not shield them from the consequences of interfering with their debtor's property without a writ. When the attachment was dissolved these defendants, as attachment plaintiffs, were, as has been before stated, as much without justification in taking the property, so far as actual damages are concerned, as if they had taken it without a writ.

Matters in the nature of a settlement are set up by defendants. The facts in this regard are, that the levy of the attachment was made on the goods then in the hands of Culberson & Hall, and that a small portion of the goods so seized (some $240, in value) were not in the stock when owned by these plaintiffs, but was stock purchased by Culberson & Hall after the sale to them by these plaintiffs. As subsequent actions showed, it was property not intended to be levied upon. It was not in dispute. There was no contention over it. It was simply inadvertently attached by being in the storehouse with the stock claimed by these defendants to have been fraudulently sold. Culberson & Hall made claim for these goods to these defendants, the specification in the claim showing that they were not a part of the property in dispute. Another claim was made for $70, on account of matters wholly disconnected from the contest over the Gens & Tiede stock, or its sale to Culberson & Hall. This claim included house rent; interest on an amount

of money belonging to Culberson & Hall which was locked in a safe in the store with the goods levied upon, also the value of some eggs and dressed poultry (not a part of the Gens & Tiede stock) which spoiled; as well as an attorney fee for consultation as to what they, Culberson & Hall, should do as to these matters which were disconnected from the Gens & Tiede property or its sale. In addition to the claims themselves there was oral testimony, drawn out principally by defendants, from which it appeared that there was no intention to settle, or understanding that the subject-matter of this suit was being dealt with. The defendants objected to plaintiffs' calling out any testimony explaining the claims in their examinations of witnesses. These objections were properly overruled. This entire question of whether there had been a settlement and satisfaction embracing the present action was submitted to the jury in proper instructions. Of this, defendants have no right to complain. It appears quite clearly from the record that there was no thought of embracing the present controversy in the terms of the settlement, and, unless we are prepared to say that a party who has a claim for damages against another which, though arising from the same wrongful act, is an injury to different properties, the act being conceded to be wrong as to one of the properties and disputed as to the other, cannot, as a matter of law, settle the one not disputed without barring himself of recovery on the other. In *Bigbee v. Combs* (64 Mo. 529), the defendant hired a horse of plaintiff and drove him so immoderately that he died. Afterwards the plaintiff presented a bill for the hire, which was paid and receipted. This receipt was held to be open to explanation, and that it was properly left to the jury to say whether there had been a settlement of the cause of action for the killing of the horse. The cases of *Mateer*

*v. Railroad* (105 Mo. 320), and *Hinkle v. Railroad* (31 Minn. 434), upon which defendants rely, are not applicable. The former, in so far as the question here is concerned, was where a full settlement was conceded, and it was sought to be set aside on the ground of fraud. In the latter case there was a settlement of a claim made by the plaintiff therein; and, as the court states, there was *nothing shown to rebut* the presumption that it embraced his whole cause of action. The court is particular to say, in justifying the trial court in not submitting the question to the jury, that if there had been any fact shown to give the settlement the character "of a recompense in part only, the result would have been different."

Much of the authority and argument of defendants on this point is really inapplicable; it is upon that branch of the law concerning splitting a cause of action by instituting separate actions. The law looks with favor upon the settlement of disputes without a resort to litigation. It will not compel one to forego the settlement of a portion of his demand on pain of losing the remainder. On a question of settlement there are no artificial mysteries or technical pitfalls. The question to determine is one of mere facts, whether there has been a settlement of the thing in litigation. On the other hand, the law looks with disfavor upon harassing a defendant with *many* actions on *one cause* of action. The two questions are wholly different.

The defendants set up in bar of this suit that plaintiffs had brought an action on the attachment bond and recovered thereon; which action, it is alleged, involved a part of the wrongs complained of in this suit. There was nothing tending to prove this, defendants introducing no evidence. Nor was it admitted in the reply. The reply was, that the cause of action referred to in the answer was one exclusively

in favor of these plaintiffs as defendants in the attachment, whereas the present action is one which arose to Culberson & Hall and was assigned to plaintiffs. The reasonable inference from the reply is, that the bond covered only those matters which had injured or damaged these plaintiffs as defendants in the attachment suit, and, as they made no claim to the property attached, it would not cover an injury to such property. Defendants should have sustained their answer by evidence tending to show the truth of its allegations.

Upon the whole case, after considering all the objections made, we are clear that the judgment should be affirmed. GILL, J., concurs; SMITH, P. J., not sitting.