## Mack & Co. v. McDaniel.

*(Circuit Court, E. D. Arkansas.   October, 1880.)*

1. ATTACHMENT—REMOVAL OF PROPERTY OUT OF THE STATE—ARKANSAS STATUTES.—A statute in Arkansas declares a creditor may have an attachment against his debtor who "is about to remove, or has removed, his property, or a material part thereof, out of this state, not leaving enough therein to satisfy the plaintiff's claim, or the claim of said defendant's creditors."

*Held,* that a merchant who did not have property enough to pay his debts, and who invested a material portion of his assets in cotton and shipped it out of the state, was liable to attachment under this statute; that the plaintiff did not have to show the removal was made for a fraudulent purpose; and that the fact that the shipments of cotton out of the state were usual and customary with the defendant and with merchants generally doing business in the state, constituted no defence to the attachment.

Attachment.

The plaintiff sued out an attachment against the property of the defendant. The affidavit for the attachment was based on the sixth subdivision of section 388, Gantt's Digest, which declares the plaintiff may have an attachment against his debtor who "is about to remove, or has removed, his property, or a material part thereof, out of this state, not leaving enough therein to satisfy the plaintiff's claim, or the claim of said defendant's creditors."

The defendant filed an affidavit denying the grounds of attachment.   On the trial of this issue it was shown that the defendant was a retail merchant, doing business at Arkadelphia, in this state; that at and before the time the attachment was sued out he was insolvent, and wholly unable to pay his debts; that his property consisted chiefly, if not alto-

gether, of a small stock of goods and accounts and notes; that for some time before and up to the date the attachment was sued out the defendant was converting his goods and credits into cotton, and shipping this cotton out of the state. Within 60 days immediately preceding the date of the attachment, a large and material portion of his property was thus converted into cotton and the cotton shipped out of the state, and at the time, and after this cotton was shipped, the defendant did not have property enough in the state to pay his debts, or the debt of the plaintiffs, which was overdue, and was for goods purchased, and which the defendant had declined to pay or secure for want of ability to do so.

It was further shown that it was the custom of merchants to sell goods for cotton and receive payment of debts due them in cotton, and to ship such cotton out of the state in the ordinary course of their business; and that the purchase and shipment of the cotton by the defendant was in the usual course of his business as previously conducted.

*Eben W. Kimball,* for plaintiffs.

*F. W. Compton* and *J. M. Moore,* for defendant.

CALDWELL, D. J., (*charging jury.*) Counsel for defendant have argued with earnestness and ability that the shipment of cotton out of the state by the defendant, though such cotton constituted a material part of his property, and though he may not have had left in the state enough property to satisfy his debts, is not a removal of his property out of the state within the meaning of the statute, because such shipment was made in the usual course of business of the defendant, as a merchant, and was in accordance with the usual course of business of merchants generally in this country.

It is conceded that the shipment of cotton in this way is in accordance with the usual custom of merchants. Undoubtedly a merchant who pays his debts, or has property enough left in the state to pay his debts, may convert a part or all of his capital invested in his business into cotton, and ship it out of the state, and he is not liable to attachment under this section. Such a merchant is not within either the letter or spirit of the statute. But because a solvent merchant who

pays his debts, or has property enough outside of his investments in cotton to pay his debts, may do this, does it follow that an insolvent merchant who does not pay his debts, and has not property enough left in the state to pay them, may invest his means in cotton, and remove it out of the state, when such cotton constitutes a material part of his property?

Confessedly, the latter case falls within the very letter of the statute; and why not within its meaning and spirit? A construction that would place the solvent merchant in such case on the same plain with the insolvent merchant would nullify the statute, and that, too, not in the interest of merchants conducting their business according to the recognized rules of commercial business and integrity, but in the interest of that class who either will not or cannot comply with the plainest obligations imposed on merchants by law and sound mercantile usage.

It does not lie in the mouth of a merchant who is unable to pay his debts, and who refuses either to pay or secure his commercial paper, and who has not property in the state sufficient to pay his debts, to say that because a solvent merchant may ship his cotton out of the state, that therefore he may do the same, although it may constitute a material part of his property. If a merchant in such a plight may do this, he may continue the process until the last dollar's worth of his property has assumed the shape of cotton and been shipped out of the state. In such a case a creditor is not, under our statute, bound to stand by and be compelled to take the risk of the proceeds of such property returning to the state, and all other risks incident to such business.

It would not do for a court to say that an insolvent merchant who refuses to pay or secure his creditors for a want of ability to do so, is carrying on business as merchants usually do. Such a man ceases to be a merchant in the proper acceptation of that term. He does not comply with his legal obligations, nor conform to sound commercial usage and custom in the conduct of his business and in his dealings with his creditors, and has no right, therefore, to demand that the

law and his creditors shall treat him in the same manner that a solvent merchant doing business regularly as merchants usually do would be treated. He cannot repudiate the duties and obligations imposed on him as a debtor and merchant, and at the same time claim the legal rights accorded to a debtor who discharges, or is willing or able to discharge, his obligations to his creditors.

While the single fact of insolvency of a merchant is not ground of attachment, there certainly is nothing in the law or sound public policy to encourage insolvent men to conduct a commercial business where it is obvious that such business can only be carried on at the expense of unsuspecting or victimized creditors. If an insolvent man will conduct business as a merchant he cannot, on any pretext, remove a material part of his property out of the state without rendering himself liable to the process of attachment. An insolvent debtor may make a *bona fide* sale of all or any portion of his property within the state, but when he sends a material portion of his property out of the state for sale or on speculation for his own account, he renders himself obnoxious to process under this statute. Insolvent merchants have no greater privileges under this statute than any other insolvent debtor. Every debtor who removes his property or a material part of it out of the state, not leaving enough to satisfy the claims of his creditors, is within the statute, whether he be a merchant, farmer, or lawyer, and whether the property so removed be cotton, cattle, horses, or any other kind of movable property. And the mode in which the debtor acquired the property can make no difference. Nor is the motive for the removal material. The law does not require that the removal shall be made with a fraudulent intent or for a fraudulent purpose. There is nothing unreasonable or harsh in this rule, for an insolvent man has no legal or moral right to insist on the privilege of putting his diminished and insufficient assets to the hazards of shipment beyond the state, when it was obvious all risks incident to such action have to be taken and borne by his creditors.

No general rule of interpretation can be framed applicable

to every state of case that may arise under this statute; and it would not be proper or safe to enumerate supposed cases that would be within or without the statute.

It is sufficient to give the jury an exposition of the statute applicable to the facts of this case. Other cases depending on a different state of facts will be decided when they arise. The jury are therefore instructed that if they find, from the evidence, that the defendant owed the plaintiffs the debt sued for in this action, and that it was due, and that the defendant was in the habit, in the course of his business as a merchant, of investing his capital and credit in cotton, and shipping the same out of the state, and that the cotton thus shipped within a period of about 60 days, immediately preceding the date of the writ in this case, constituted a material portion of the defendant's property, and that after such shipment the defendant did not have enough property left in the state to satisfy his debts, then the attachment was rightfully sued out, without reference to the motive or intention of the defendant in shipping such cotton. But if the cotton so shipped did not constitute a material portion of his property, or if he had property left in the state after its shipment sufficient to satisfy his debts, then the issue must be found for defendant.

Verdict and judgment sustaining the attachment.