SIMMONS HARDWARE COMPANY, Respondent, v. FIGHTING THE FLAMES COMPANY, Appellant.

**St. Louis Court of Appeals, January 12, 1909.**

1. **ATTACHMENT: Removing Property out of the State: Intent.** In an action by attachment, where the affidavit alleged the fifth ground for attachment set out in section 366, Revised Statutes 1899, that the defendant was about to remove its property and effects out of the State with the intent to defraud, hinder and delay its creditors, it was not sufficient to prove that the effect of the defendant's moving its property out of the State was to hinder and delay the creditors, but an intent to do so must be shown.

2. ———: ———: ———: **Insolvency.** And the fact that the defendant was at the time insolvent would not affect the necessity of proving such intent.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

REVERSED AND REMANDED.

*Robert L. McLaran* and *George E. Smith* for appellant.

(1) To establish the fifth statutory ground for attachment, the plaintiff is required to allege and prove: (a) A purpose on the part of the debtor to remove his property out of the State. (b) An intent by such removal to defraud, hinder or delay his creditors. The element of wrongful intent to defraud, hinder or delay is material to constitute the fifth ground. Reed v. Pelletier, 28 Mo. 173; Douglass v. Cissna, 17 Mo. App. 44. (2) The second instruction offered by defendant and refused, states the law of this case, and should have been given. No law forbids a debtor removing his property temporarily from State to State for business purposes. The removal is lawful unless the intent to

hinder or delay creditors is alleged and proved. Steele v. Dodd, 14 Neb. 496; Hunter v. Soward, 15 Neb. 215; Dunn v. Claunch, 13 Okla. 577; Warder v. Thrilkeld, 52 Iowa 134; Bernhard v. Cohen, 56 N. Y. Sup. 271; Mott v. Lawrence, 17 How. Pr. 559. (3) The attachment law should not be construed to hamper legitimate trade or business. This show was designed to travel from State to State, and its business was lawful. Courts of high authority have held that the use of such property for the purpose for which it was adapted was not a violation of the attachment law, though taken out of the State. When the reason of the law fails, the law itself fails. Russell v. Wilson, 18 La. 367; Hogan v. Carras, 12 La. Ann. 49; Lyons v. Mason, 4 Cold. (Tenn.) 525; Montgomery v. Tilley, 1 B. Monroe (Ky.) 155. (4) Upon the same reason, the shipping of property out of the State to market, or for honest business purposes, does not violate the attachment law. Hurd v. Jarvis, 1 Pinney (Wis.) 475; Stewart v. Cole, 46 Ala. 646; White v. Wilson, 10 Ill. 21; Rice v. Pertuis, 40 Ark. 157; Clinch Riv. M. Co. v. Harrison, 91 Va. 130.

*S. T. Smith* and *Thomas S. Meng* for respondent.

STATEMENT.—In this action of attachment the instructions given and refused in the trial of the plea in abatement, were as follows:

"(1) If you believe from the evidence that at the time of the suing out of the writ of attachment herein, defendant was indebted to a large number of creditors, and was unable to pay its indebtedness, which was due and owing at that time, and if you further believe from the evidence that defendant was about to remove all of its property out of this State, and if you believe from the evidence that as the natural and probable effect of such contemplated removal, all defendant's property would have been out of this State and not subject to process of its courts at the time when defendant's creditors,

would in the ordinary course of business have brought suit on their claims, and in the course of legal procedure would have obtained judgment against defendant in the courts of this State, and have been entitled to execution thereof, then your verdict must be for plaintiff.

"(2)    If you believe from the evidence that at the time of the suing out of the writ of attachment herein, defendant was about to remove all of its property out of this State and use the same in an amusement tour of various States, and that the natural and probable consequence of such removal would have been to hinder or delay its creditors in the collection of their debts, then your verdict must be for plaintiff, although you may further find from the evidence that defendant intended to use said property for a short period near the commencement of said tour at various places in the State of Missouri, and in the city of St. Louis, and although you further find from the evidence that said property was actually brought back to the city of St. Louis, and sold under order of court in assignment proceedings.

"(3)    You are instructed that every one is presumed to intend the natural and probable consequence of his acts, and if you believe from the evidence that at the time of suing out the writ of attachment herein, defendant was about to remove all or a large portion of its property out of this State and that the natural and probable effect of such removal would be to hinder or delay its creditors in the collection of their debts; then it is presumed that such removal was made with the intent to hinder or delay the creditors of defendant.

"(4)    In order to find for plaintiff on the ground that defendant was about to remove its property out of this State, it is not necessary that you should believe that such contemplated removal was with the intent to defraud its creditors, but it is sufficient for you to believe that such contemplated removal was

with the intent to hinder or delay creditors of defendant in the collection of their debts.

The following instruction was given for defendant:

"(5) The jury are instructed that the only question for them to determine on this trial is whether or not, on May 3, 1906, when the attachment issued, the defendant was about to remove its property or effects out of this State with the intent to hinder or delay its creditors.

"The burden of proof is upon the plaintiff to show by the greater weight of evidence, not only that defendant was about to remove his property, or effects out of this State, but plaintiff must go further and show that such removal was to be made with the intention on the part of the defendant, by such removal, to hinder or delay its creditors, and if you find that such wrongful intention is not proved by the greater weight of evidence, then your verdict should be for defendant."

You are further instructed that there is no evidence of fraud in the case.

The two following instructions asked by defendant were refused:

"(1) Defendant asks the court to declare as matter of law that upon all the evidence in this case, the first ground of attachment cannot be sustained, and the jury will find for defendant on the plea in abatement.

"(2) Defendant asks the court to instruct the jury that if it finds from the evidence, that the defendant was the owner of a traveling show, and that it removed its property from this city on May 4, 1906, for the sole purpose of giving exhibitions at various places in this State and other States, and that it then intended to return and did return to this State on or about June 10, 1906, and that its officers and managers, when it so left this State, made no concealment of their purpose and had no fraudulent intention by such re-

moval to hinder or delay its creditors, then the plaintiff cannot maintain its attachment in this case, and your verdict should be for the defendant on the issues raised by the plea in abatement, even though you may further find that defendant took away from this State all of its property temporarily, including its business office and books of account."

GOODE, J. (after stating the facts.) —The defendant is a corporation which was organized January 8, 1906, with a capital stock of $36,000, to travel over the country and exhibit a spectacle depicting the fighting of a conflagration. It provided itself with the usual apparatus for extinguishing fires in cities, such as steam fire engines, hose reels, hook and ladder trucks, besides horses and cars to move the properties of the show, and tents, camping outfits, and cooking utensils designed for the use of the performers, of whom there would be two or three hundred. An office was kept in St. Louis during the promotion and organization of the company and thereafter, its mail address was the Columbia Theatre in said city, but it appears to have kept no business office there with an agent in charge on whom process could be served. The exhibition was projected on such a scale that twenty or more freight cars and several passenger and sleeping cars were required to move the property and employees. The first intention was to start on a route about May 1, 1906, but because the scenery was damaged to the amount of several thousand dollars and several employees injured by a storm, the date of leaving St. Louis was postponed. The route contemplated included forty-odd points, beginning with Joplin, Missouri, and taking in cities in Kansas, Nebraska, Iowa, Illinois, Wisconsin, Minnesota, Indiana, Michigan and Ohio. St. Louis was to be revisited about the middle of June and the engagement there was to continue a week. On May 3d plaintiff caused an attachment to be levied

on a portion of defendant's property, to-wit, two Pullman cars, just as the company was about to start on its tour. Several grounds of attachment were laid in the affidavit, but the only one submitted to the jury or that we are concerned with on the appeal, is that defendant was about to remove its property and effects out of the State with the intent to defraud, hinder and delay its creditors. The two sleeping cars were released from the attachment by defendant executing a forthcoming bond, and the company then proceeded on its tour; but it fell into financial embarrassment and, after exhibiting for eight days on the return to St. Louis, it executed on June 9, 1906, a general assignment for the benefit of its creditors. Plaintiff gave evidence which tended to prove the company was heavily in debt and, indeed, insolvent, before it left Missouri. Plaintiff's account was presented for payment on May 1st, before the tour began, and some negotiations ensued looking to a compromise; but as the parties did not agree, the attachment was levied while the property was in process of loading on the cars for movement. The attorney who presented plaintiff's account, testified the president of the company told him its indebtedness was about $40,000; that the proposed route covered twenty-three weeks and the company intended to winter somewhere in the south. This testimony was denied by the president. The attachment action was instituted to recover for merchandise sold and delivered, amounting to some nineteen hundred dollars. The trial of the plea in abatement resulted in a verdict for plaintiff sustaining the attachment on the ground we have recited, and after judgment had been given for plaintiff on the merits, this appeal was taken, in which the controversy is over the rulings on the requests for instructions at the trial of the plea in abatement.

In our opinion the instructions granted for plaintiff are irreconcilable with the one given for defendant.

The only theory on which it is sought to reconcile them, is by raising a constructive intention on the part of defendant to hinder or delay its creditors, because the removal of its property out of the State would have that effect if the corporation was insolvent. This is the argument put forward by respondent's counsel. Insolvency cuts no important figure in the matter; for whether insolvent or not, the removal of all its property from the State would hinder and delay appellant's creditors in a certain sense; that is to say, put the property out of the reach of the ordinary processes of our courts. The fifth ground of attachment afforded by section 366 of the Statutes (R. S. 1899) allows the remedy only when the removal of property and effects out of this State is made with the intent to defraud, hinder or delay creditors. We have no doubt the word "intent" is used in the sense of "purpose," and that the clause requires such a purpose or intent to be found as the condition on which a seizure will be upheld. There have been rulings rendered on the seventh, eighth and ninth clause of the section upholding attachments based on one or more of those statutory grounds, when a debtor had conveyed, assigned or disposed of his property or effects by some arrangement, usually an instrument in writing, the natural result of which was to defraud, hinder or delay creditors. Those decisions were put on a presumption that the debtor intended to defraud, hinder or delay his creditors, inasmuch as one or the other of those effects was the inevitable consequence of what he did. It will be observed said clauses do not use the words "with the intent to defraud, hinder or delay creditors;" but instead the words "so as to hinder or delay his creditors;" and it is easier to interpret the latter words to refer to the consequence, rather than the purpose, with which the debtor disposes of his property, than it is to so hold in respect of the former words. However, the seventh, eighth and ninth grounds require a fraudulent disposition of prop-

erty by a debtor in order to give cause for an attachment; but a disposition which inures to the benefit of the grantor in contravention of the statutes against fraudulent conveyances, is treated as cause for attachment; that is to say, fraud in law, so-called, as well as fraud in fact, will suffice when the attachment is sued out on those grounds. [Reed v. Pelletier, 28 Mo. 173.] But when the action is founded on the fifth clause of the section, to-wit, that a defendant is about to remove his property and effects out of the State with intent to defraud, hinder and delay his creditors, an actual purpose to defraud, hinder or delay must appear. [Reed v. Pelletier, supra; Douglas v. Cissna, 17 Mo. App. 4; Steele v. Dodd, 14 Neb. 496; Hunter v. Seward, 15 Neb. 215; Warder v. Thrilkeld, 62 Ia. 134; Mott v. Lawrence, 17 How. Pr. 554; Bernard v. Cohen, 56 N. Y. Supp. 271; Dunn v. Claunch, 13 Okla. 577.] It is true, as respondent contends, that in most of the cases just cited from outside jurisdictions wherein it was held the intent must be proved, and would not be legally presumed from the bare fact that the removal would prejudice creditors, the statute involved prescribed fraud as the ground of attachment. But if an attachment is allowed for doing an act with intent to hinder or delay creditors, as well as for doing one with intent to defraud, and the statute says the intention to do one or the other must exist, it then becomes essential for the triers of the facts to find the debtors had done the act (in this case, moved out of the State) with intent either to defraud, hinder or delay. Respondent invokes the following cases in support of the proposition that if appellant's removal of its property from this State would necessarily operate to hinder or delay its creditors, an attachment would lie. [Montgomery v. Tilley & Sanders, 1 B. Mon. (Ky.) 155; Mingus v. McLeod, 25 Ia. 452; Lyons v. Mason,

4 Cold. (Tenn.) 525; Mack v. McDaniel, 4 Fed. 294.] Not one of those cases is in point because of the differences between the statutes involved in them and our attachment statutes. In the Tennessee case (Lyons v. Mason) the statute allowed an attachment if the debtor was about to remove himself and property out of the State, regardless of the intention with which he moved. In the Kentucky case (Montgomery v. Tilley) the statute on which the attachment was based was in one clause the same as the Tennessee case; while the other clause provided for a seizure if the debtor was attempting to sell, convey or otherwise dispose of his property with the intention of defrauding, hindering or delaying his creditors; that is to say, a ground like the seventh, eighth and ninth ground of our statute. The Iowa case and the one passed on by the Federal court in an Arkansas transaction, involved statutes allowing an attachment if a debtor was about to remove or had removed property out of the State without leaving enough property therein to satisfy the claims of his creditors. Two other decisions from Arkansas on the same statute are cited, and also two decisions from Mississippi. [Durr v. Hervey, 44 Ark. 301; Simon v. Assn., 54 Ark. 58; Myers v. Farrell, 47 Miss. 281; Crow v. Lemon, 69 Miss. 799.] The case in the 47th Mississippi discussed matters not relevant to the question before us; whereas the one in the 69th Mississippi was an attachment based on a statute granting said process when a debtor had removed or was about to remove his property out of the State; nothing being prescribed about the intention of the removal. Certain Missouri decisions are likewise cited as in favor of respondent's position, but they all deal with other grounds of attachment than the one on which respondent succeeded. [Potter v. McDowell, 31 Mo. 62; Crow v. Beardsley, 68 Mo. 435; Segers & Sons v. Thomas Bros., 107 Mo. 635; Hall v. Goodnight, 138 Mo. 566; State to use v. O'Neil, 151 Mo. 67.] The ap-

pellant corporation was organized for the express purpose of going out of the State with its property, and if not insolvent from the first, likely it would have been reduced to insolvency by preventing it from moving; for thereby the sole object of its existence would have been frustrated.  We do not think, even if it was insolvent, a legal presumption would arise that its purpose in taking its paraphernalia out of the State was to hinder or delay creditors; for, perchance, if business was good, it might make money wherewith to meet its obligations and emerge from a condition of insolvency; and it might have had such a result in mind. Though the theory on which the instructions are defended is that appellant was insolvent, only the first instructions granted for respondent required the jury to find it was.  Hence on respondent's own theory the case was submitted on erroneous charges.  The instructions granted for appellant stated the law of the case.

It is insisted the second of the instructions requested by appellant and refused, should have been given, but we think it was properly refused, for this reason; it was in the nature of a running comment on certain facts.

The judgment is reversed and the cause remanded. *Nortoni, J.,* concurs; *Reynolds, J.,* not sitting.