**J.C. JONES AND COMPANY, a Missouri Corporation, Plaintiff–Appellant,**

v.

**Don DOUGHTY and Linda Doughty, Defendants–Respondents.**

No. 15363.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 25, 1988.

Motion for Rehearing or Transfer
Denied Nov. 15, 1988.

John R. Lewis, Lewis & Stevens, P.C., Stephen L. Shepard, Dwight E. Rahmeyer, Shepard & Rahmeyer, P.C., Springfield, for plaintiff-appellant.

Craig F. Lowther, Kendall R. McPhail, Lowther, Johnson, Lowther, Cully & Housley, Springfield, for defendants-respondents.

FLANIGAN, Presiding Judge.

Plaintiff J.C. Jones and Company, a Missouri corporation, brought this action against defendants Donald Doughty and Linda Doughty, husband and wife. On December 24, 1985, defendants offered to sell plaintiff a 35–acre tract of land ("the land") in Springfield. Whether the parties' subsequent dealings ripened into a binding contract is one of the issues. On January 10, 1986, defendants entered into a contract with a partnership known as Stenger–Pendleton Investments ("Stenger"), whereby Stenger agreed to buy the land for $305,-000. Pursuant to that contract, the defendants conveyed the land to Stenger on February 11, 1986.

On January 10, 1986, plaintiff brought the instant action ("the main action"). On January 12, 1986, personal service of the suit papers was obtained on defendants at their residence in Greene County. On Jan-

uary 21, 1986, attorney Craig Lowther entered his appearance for defendants.

On February 10, 1986, plaintiff purchased the land from Stenger for $405,000.

On February 11, 1986, plaintiff, through its president and sole shareholder Jim C. Jones, filed, in the main action, an "Affidavit to Obtain Writ of Attachment," and on the same date the trial court issued a writ of attachment. Plaintiff's pleadings in the main action admitted that, pursuant to the writ of attachment, the sheriff of Greene County "did levy upon and garnish" defendants' joint bank accounts. The bank accounts, located at Boatmen's National Bank of Springfield, totaled $15,836.73.

Defendants filed a motion to dissolve the writ of attachment and, on February 19, 1986, an evidentiary hearing on that motion was held before Judge David Anderson. On March 18, 1986, Judge Anderson overruled that motion.

On March 25, 1986, Judge Anderson disqualified himself. Later the Missouri Supreme Court appointed Judge L. Thomas Elliston as the trial judge. On March 6, 1987, Judge Elliston dissolved the attachment and ordered release of the bank accounts.

The case proceeded to a nonjury trial before Judge Elliston on plaintiff's three-count petition and defendants' six-count counterclaim. Only Count I of the petition and Counts V and VI of the counterclaim need be considered. Count I of the petition was for breach of the contract for the sale of the land and sought damages in the sum of $150,000. Count V of the counterclaim sought $150,000 in actual damages for wrongful attachment. Count VI of the counterclaim incorporated Count V and sought $850,000 in punitive damages.

On September 9, 1987, the trial court entered its judgment finding in favor of defendants and against plaintiff on all three counts of the petition. The judgment reiterated Judge Elliston's ruling on the dissolution of the attachment. With respect to the counterclaim, the trial court found in favor of plaintiff and against defendants on the first four counts. On Count V of the counterclaim the court found in favor of defendants and against plaintiff and awarded $10,514.94. On Count VI of the counterclaim the trial court found in favor of defendants and against plaintiff and awarded $50,000. The judgment also awarded defendants $1,277.40 based on a motion for attorney's fees filed by defendants under § 514.205.[1] Plaintiff appeals.

In general, plaintiff claims that the trial court erred: (1) in denying plaintiff relief on Count I of the petition; (2) in "prejudging" Count I of the petition; (3) in entering the order of March 6, 1987, dissolving the attachment; (4) in granting defendants relief on Count V and Count VI of the counterclaim; (5) in awarding defendants $1,277.40 attorney fees under § 514.205; and (6) in failing to include, in its final judgment, "a disposition of the writ of attachment." Only claim (4) has merit.

Plaintiff's first point reads:

"The trial court erred in entering judgment in favor of the defendants and against the plaintiff [on Count I of the petition] because: (a) the court misapplied the law and facts on the issue of offer and acceptance, and (b) the court misapplied the law and the facts on the issue of conditions subsequent."

The foregoing point preserves nothing for appellate review because it fails to comply with Rule 84.04(d). That rule requires that a point state "briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous." The rule also states: "Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule."

This court must confine its review to the points briefed, *Kurtz v. Fischer,* 600 S.W.2d 642, 645 [1] (Mo.App.1980), and, of

---

**1.** All references to statutes are to RSMo, 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

course, Rule 84.04(d) applies to review of court-tried cases as well as cases tried to a jury. *Plaster v. Standley*, 569 S.W.2d 784, 787 [2] (Mo.App.1978).

A point consisting merely of an abstract statement of law does not comply with Rule 84.04(d). *Draper v. Aronowitz*, 695 S.W.2d 923, 924 [1] (Mo.App.1985). A point stating that the trial court erred in that it "erroneously applied and declared the law" is nothing but an abstract statement and preserves nothing for review. *Best v. Culhane*, 677 S.W.2d 390, 394 [4] (Mo.App. 1984). "It is not enough for the point, as here, via conclusions of claimed error to simply say the trial court was wrong without alluding to some evidence or testimony which gives support to such conclusions." *Montesano v. James*, 655 S.W.2d 137, 139 [2] (Mo.App.1983). See also *Kelly v. City of St. Louis Bd. of Adj.*, 745 S.W.2d 177 (Mo.App.1987).

As the Supreme Court of Missouri pointed out in *Thummel v. King*, 570 S.W.2d 679, 686 (Mo.1978), the requirement of Rule 84.04(d) "is not simply a judicial word game or a matter of hypertechnicality on the part of appellate courts." In *Thummel* the court discussed the "sound policy" underlying Rule 84.04(d). That discussion need not be repeated here but it merits careful reading.

This court is under no duty "to search either the transcript on appeal or the argument portion of an appellant's brief to come by the meaning of a point on appeal." *Barber v. MFA Milling Company*, 536 S.W.2d 208, 210 [4] (Mo.App.1976). See also *Brewer v. Blanton*, 555 S.W.2d 381, 386 (Mo.App.1977).

This court has made a gratuitous examination of plaintiff's argument under its first point and no plain error, within the meaning of Rule 84.13(c), appears. Plaintiff, according to its brief, is a Missouri corporation whose primary business is "a real estate brokerage service" but it also does some "real estate developing." Its president and sole shareholder is Jim C. Jones, who is a licensed real estate broker. Defendant Don Doughty is a licensed real estate agent associated with another realty firm known as Carol Jones Realtors.

Between December 17, 1985, and January 6, 1986, there were numerous communications, written and oral, between plaintiff and defendants. In addition to Jim Jones, other participants in those communications were Charles Ellis, Bill Drummond, and Thomas Barnett, all affiliated with plaintiff. Also participating, in addition to the defendants, were Bo Misemer and Jerry Sellers, who are affiliated with Carol Jones Realtors. Apparently everyone wanted to get into the act.

This court has read the ponderous record on appeal. The legal file portion of it consists of 469 pages, many of which are unnecessary. A supplemental legal file provided by defendants consists of 108 pages. The transcript consists of six volumes. There are 676 pages in the three volumes which contain the testimony at the trial.

To say the least, the record is replete with major conflicts in testimony concerning who said what to whom at what time and what actions, if any, were taken. Significantly, Jim Jones admitted that he signed the alleged contract on January 2 but that he dated the document December 31.

No purpose would be served in undertaking the formidable task of recounting the trial testimony concerning the dealings of plaintiff and defendants with respect to the land. The trial court reached the right result in denying plaintiff relief on Count I of the petition. Defendants' first point, even if it had been properly preserved, has no merit.

Plaintiff's second point reads:

"The trial court erred in entering judgment in favor of defendants and against the plaintiff [on Count I of the petition] because the trial court prejudged plaintiff's claim for breach of contract and determined that plaintiff had no cause of action prior to receiving any evidence on that claim."

█ Plaintiff makes no mention of any statement or other conduct on the part of Judge Elliston to support its assertion that

Judge Elliston "prejudged" the claim. Instead plaintiff merely describes certain of the pleadings and some of the proceedings, including the hearing before Judge Anderson on defendants' motion to dissolve the attachment. Plaintiff then states: "Plaintiff had the burden to prove its ground for attachment and it did." The fact is, as this court will later hold in this opinion, there was a failure on the part of plaintiff to prove, at the hearing of February 19, 1986, "that the attachment was properly granted," Rule 85.14(b), and Judge Elliston properly dissolved the attachment.

Plaintiff's brief says:

"The defendants had already lost the issue on whether there was any ground for attachment at the evidentiary hearing before Judge Anderson. This could not, therefore, have been the basis for the trial court's ruling to allow their counterclaim to be heard. The only basis left upon which the Court could have heard the defendants' counterclaim is that plaintiff had no cause of action on its breach of contract claim. The Court necessarily made this decision prior to hearing any evidence on the contract claim because that determination is a condition precedent to the defendants even having a cause of action for wrongful attachment....[2] Plaintiff is entitled to a fair and impartial hearing on its breach of contract claim before a tribunal which has not prejudged the merits of that cause of action."

Plaintiff's second point stems from plaintiff's misunderstanding of the law, as discussed more fully under plaintiff's third point. No facts are stated in plaintiff's argument under its second point which would even colorably support an inference that Judge Elliston prejudged Count I. Such an inference cannot arise from the correct ruling of Judge Elliston in dissolving the attachment. Plaintiff's point 2 glaringly lacks merit.

Plaintiff's third point is that the trial court erred in entering the order of March 6, 1987, sustaining defendants' motion to dissolve the attachment because: (a) the order was entered without an evidentiary hearing, and (b) Judge Anderson's order of March 18, 1986, which overruled defendants' motion to dissolve the attachment, was "res judicata" and "conclusively established" the truth of the allegations on which the attachment was issued and the fact that the writ was valid and properly issued.

Countering plaintiff's third point, defendants make the valid argument that the evidence adduced by plaintiff at the hearing of February 19, 1986, was insufficient as a matter of law to support the attachment, that Judge Anderson erred in overruling defendants' motion to dissolve, and that Judge Elliston had the authority to correct Judge Anderson's ruling and to dissolve the attachment.

"Attachments may be dissolved on motion made by the owner of the property at any time before final judgment." Rule 85.14(a). At the hearing on the motion to dissolve the attachment, the burden was on plaintiff to prove that the attachment was properly granted. Rule 85.14(b). Rule 85.14 requires the court to dissolve an attachment at any time before final judgment if the court makes one of several enumerated findings, one of which is that "for any other reason the writ of attachment should not have been issued."

Rule 85.03(b) requires, among other things, that an *affidavit* requesting a writ of attachment shall state "(b) facts showing the existence of one or more of the

---

**2.** This statement is wrong.

"It is neither a defense nor a circumstance in mitigation of damages that the claim sued on was a just one if the ground for attachment did not exist, for the claim may be just and yet the attachment be wrongful, and even maliciously wrongful." 6 Am.Jur.2d Attach. & Garn. § 615, p. 997.

In *Gens & Tiede v. Hargadine & Co.,* 56 Mo. App. 245, 253–254 (1894), the court said: "A creditor cannot seize and practically destroy his debtor's property with impunity, unless he be backed by the rightful process of a court. Defendants cannot be shielded from the consequences of their wrongful act [invalid attachment] by reason of their having, subsequently, obtained a judgment for their debt."

grounds for attachment set forth in § 521.010, RSMo."

Among the grounds for attachment set forth in § 521.010 are the following:

"(1) Where the defendant is not a resident of this state;

.    .    .    .    .

(4) Where the defendant has absconded or absented himself from his usual place of abode in this state, so that the ordinary process of law cannot be served upon him;

(5) Where the defendant is about to remove his property or effects out of this state, with the intent to defraud, hinder or delay his creditors."

The affidavit filed on behalf of the corporate plaintiff was executed by its president, Jim C. Jones. The only portion even arguably purporting to comply with Rule 85.-03(b) is the following:

"3. That the Defendant, DON DOUGHTY, is not a citizen of the United States of America, instead, is a citizen of the Country of Canada and that the Defendant, DON DOUGHTY, and his wife, LINDA DOUGHTY, are about to abscond and absent themselves from their usual place of abode in this state so that the ordinary process of law cannot be served upon them and are believed by this Plaintiff to be removing their property or effects out of this state with the intent to defraud, hinder or delay their creditors and, more specifically, this Plaintiff in the litigation above styled."

It should be noted that the affidavit does not state that either defendant is a nonresident of the state. It does state that defendant Don Doughty is a citizen of Canada, but citizenship and residence are two different matters. The affidavit does not state that either defendant "*has* absconded or absented himself ...," § 521.010(4). It merely states that the defendants "*are about to* abscond and absent themselves...." It does not state that either defendant "*is* about to remove his property or effects....," § 521.010(5). It merely states that "plaintiff" *believes* defendants to be removing their property. To say the least, the affidavit was carelessly drafted.

It is unnecessary, however, for this court to rule on the sufficiency of the affidavit and it refrains from doing so.

Judge Elliston dissolved the attachment pursuant to a motion by defendants to reconsider the prior ruling of Judge Anderson on defendants' initial motion to dissolve the attachment. Defendants' motion to reconsider stated, among other things, "There was no evidence given at the first hearing which would support any grounds for attachment as concluded (sic) in plaintiff's affidavit." That statement is true and Judge Anderson should have dissolved the attachment.

At the hearing on defendants' motion to dissolve the attachment, plaintiff presented the testimony of Bill Drummond, Bill Hart, Linda Doughty, Roger Eddy, and Tim Cook.

Drummond was one of the sureties on the attachment bond and his testimony dealt solely with his qualifications as surety.

Bill Hart testified that he was the attorney who represented Stenger at the closing of the contract between Stenger and defendants which was held on February 11, 1986. Both defendants were present at the closing which took place at an office in Springfield. As a part of the transaction, Stenger's uncertified check in the amount of $31,282.49, payable to Don and Linda Doughty, was endorsed by Linda Doughty in Hart's presence, and she gave it to her husband Don Doughty. Hart did not know what happened to that check thereafter. Hart also testified that he understood Doughty was going to Canada because Doughty's daughter "was having some kind of surgery on Thrusday," and Doughty wanted to "get [the closing] done so he could leave." Hart also testified that Doughty did not give Hart "any indication that he was not going to come back or that his trip was anything other than a normal routine trip for the purpose of attending his daughter." Hart also testified that he was an attorney for Boatmen's National Bank and that he "understood that the check which Doughty received was negoti-

ated at the bank for a cashier's check and that the cashier's check was not deposited in that bank."

Linda Doughty testified that her husband is a citizen of Canada and a "permanent resident alien" of Missouri. She said she endorsed the Stenger check and handed it to her husband to do with as he saw fit. Mrs. Doughty also testified that her husband had resided with her at their home in Greene County and that he had done so ever since their marriage three years previously. Mrs. Doughty had been a resident of Missouri for the last 39 years. She said that neither she nor her husband had any plans to abscond or absent themselves from their residence in Greene County, nor did they have any intention to remove their property from the state or to hinder or defraud or delay any creditors. She said she had no creditors. She also testified that at all times since the attachment papers were served she had been in Greene County and intended to stay there. She said that "Don has no other house that he lives in," that her husband made the trip to Canada to be present when his daughter underwent surgery, and that the trip had been scheduled since Christmas. She said that her husband "goes to Canada frequently and always returns. He will be back in a week or two. He just took his clothes with him. There was nothing unusual about the trip. Don did not close any of his bank accounts before he left." She testified that she operated a hair-dresser shop in the residence, where she worked five days a week and was "booking ahead," that is, making appointments every day.

Roger Eddy testified that he was a deputy sheriff and served the attachment papers on Boatmen's Bank on February 11 at 9:40 a.m.

Tim Cook testified that he was employed at Boatmen's Bank and that the attachment papers were served on him on the morning of February 11. He also testified that Doughty negotiated the Stenger check at the bank and received in return a cashier's check. He further testified that the Doughtys had three accounts at Boatmen's Bank.

■ There was no testimony from any witness that either Don Doughty or Linda Doughty was not a resident of Missouri. Indeed Linda Doughty testified that they were Missouri residents. There was no evidence to support the ground for attachment set forth in § 521.010(1).

There was no evidence to support the ground for attachment set forth in § 521.010(4). Although Don Doughty went to Canada to be present at his daughter's operation, that fact was of no significance so far as serving ordinary process of law upon him. At all times his wife Linda resided at their home in Greene County and personal service on Don Doughty could be made by leaving a copy of suit papers with his wife at their residence. Rule 54.-13(a)(1). Of course personal service could be obtained upon Linda Doughty herself because she had not absented herself. Moreover, both defendants were represented by Craig Lowther, their attorney of record, and service of any matter connected with this action could be effected upon defendants by serving their attorney. Rule 43.01(b).

When an attachment is based on the ground set forth in § 521.010(5), "an *actual purpose* to defraud, hinder or delay must appear." (Emphasis added.) *Simmons Hardware Co. v. Fighting the Flames Co.*, 135 Mo.App. 266, 115 S.W. 467, 469 (1909). In that respect, § 521.010(5) differs from other grounds set forth in § 521.010. See *Reed v. Pelletier*, 28 Mo. 173 (1859); *Douglass v. Cissna*, 17 Mo.App. 44 (1885). *Simmons Hardware Co.*, *Reed*, and *Douglass* are bewhiskered opinions, but time has not withered their soundness.

Plaintiff's evidence merely showed that on February 11, 1986, Don and Linda Doughty received Stenger's uncertified check which Linda endorsed and gave to her husband. Doughty was on his way to Canada on a pre-scheduled trip. He took the uncertified check and obtained in return a cashier's check. What he did with the cashier's check was left open to conjecture. There is nothing sinister in any of the foregoing facts. None of them sup-

ports any inference of an actual purpose to defraud, hinder or delay creditors. There was no showing that Doughty had any knowledge of the attachment proceedings at the time he participated in the foregoing acts.[3]

There was no evidence of any statement made by either defendant at any time which would support a finding or even an inference of "an actual purpose" to defraud, hinder or delay their creditors. There was no evidence to support the ground for attachment set forth in § 521.010(5).

■ Plaintiff's assertion that Judge Elliston's order was entered without an evidentiary hearing is frivolous. Of course an evidentiary hearing was held before Judge Anderson. Thereafter, on March 25, 1986, defendants filed a motion to reconsider. On June 5, 1986, that motion was denied by another judge "without prejudice to the filing of another motion to dissolve writ of attachment." On June 10, 1986, defendants filed a motion to dissolve the writ of attachment and a motion for rehearing. That motion was submitted to the court on September 5, 1986. On September 8, 1986, the court denied that motion but granted defendants leave "to orally refile the motion at the hearing on the merits." Thereafter, Judge Elliston was assigned to the case.

On March 6, 1987, there was a lengthy proceeding before Judge Elliston, the transcript of which consumes 46 pages. All counsel were present. Several motions were ruled upon. During the course of that proceeding, attorney Lowther orally renewed his motion to reconsider. As previously stated, that motion challenged the sufficiency of plaintiff's evidence at the attachment hearing. At no time did plaintiff's attorney object to hearing that oral motion and, indeed, he made jocular remarks in stating his opposition to the motion itself.

Contrary to plaintiff's contention, Judge Anderson's order of March 18, 1986, which overruled defendant's motion to dissolve the attachment, did not rise to the dignity of "res judicata" and preclude Judge Elliston from changing that ruling. That order was not a final judgment in a prior action between the parties.

"Missouri does not follow the doctrine that a motion once ruled upon cannot be reconsidered." *Rozansky Feed Co., Inc. v. Monsanto Co.,* 579 S.W.2d 810, 813[2] (Mo. App.1979). To similar effect see *Richey v. Meter Investments, Inc.,* 680 S.W.2d 381, 384[5] (Mo.App.1984).

"Logic and justice would seem to indicate that a trial court should be permitted to retain control of every phase of a case so that it may correct errors, or, in its discretion, modify or set aside orders or judgments until its jurisdiction is extinguished by the judgment becoming final and appealable. Of course, any such action should be taken only after proper notice to the parties."

*State ex rel. Schweitzer v. Greene,* 438 S.W.2d 229, 232[5] (Mo. banc 1969).

Judge Elliston had access to the transcript of the evidence presented by plaintiff at the February 19, 1986, hearing. The issue before Judge Elliston was not one of credibility of witnesses. The issue was whether, as raised in defendants' motion to reconsider, the evidence adduced at that hearing was sufficient to support any ground for attachment. As a matter of law, it was not. This is not a situation where the credibility of the witnesses was a factor. Thus this case is not within such cases as *Lansing v. Lansing,* 736 S.W.2d 554 (Mo.App.1987), where it is held that in the absence of stipulation of the parties a successor judge is without power to render a judgment on testimony and evidence heard by his predecessor. Judge Elliston properly concluded that as a matter of law the evidence was insufficient to support the

---

**3.** At the trial Doughty testified that after he received the cashier's check he went home to finish packing and "just as I was finishing packing the sheriff served me with the attachment writ. I put the check in the Greene County deposit box after I was served with the attachment writ." There is nothing in the attachment papers served on Doughty which prevented him from properly doing so.

attachment. Plaintiff's third point has no merit.

Plaintiff's fourth point is that the trial court erred in entering judgment in favor of defendants on Count V and Count VI of the counterclaim because they were premature in that there had been no final determination of the attachment proceeding favorable to defendants, and such a determination is an element of a cause of action for wrongful attachment. This point is meritorious and requires reversal of the awards of Count V and Count VI.

According to defendants' brief, "Count V and Count VI [of the counterclaim] sought actual and punitive damages for wrongful attachment." In plaintiff's reply to each of those counts, plaintiff pleaded that the respective count failed to state a claim upon which relief can be granted. Plaintiff properly could make that contention initially on appeal, even if its reply had not so alleged. Rule 55.27(g)(2). See also Rule 84.13(a).

■ Is the prior and final determination of an attachment proceeding in favor of the attachment-defendant an element of his cause of action for wrongful attachment? For the reasons which follow, this court answers the question in the affirmative and holds that Count V and Count VI, in failing to plead such a prior and final determination, are fatally defective.

Plaintiff in the pending action put up an attachment bond. Such a bond is required by Rule 85.08, except where the state or a county is the attaching claimant, and the filing of a sufficient bond is a condition precedent for the issuance of the writ of attachment. Rule 85.04. Rule 85.24 provides that when there is a breach of the conditions of an attachment bond of the type required by Rule 85.08, *"an action"* may be brought on the bond in the name of the State of Missouri at the instance of any person injured.

A person injured by reason of a wrongful attachment is not limited to proceeding on the bond, but may ignore his remedy on the bond and sue in tort for actual damages. *Talbott v. Great Western Plaster Co.*, 151 Mo.App. 538, 132 S.W. 15, 16[3] (1910); *Fry v. Estes*, 52 Mo.App. 1 (1892). In the event the elements of malice and want of probable cause were present in the procurement of the attachment, in addition to the facts underlying an action for simple wrongful attachment, an action for *malicious* wrongful attachment will lie. *Talbott v. Great Western Plaster Co.*, supra, 132 S.W. at 17. A failure of proof of the elements of malice and want of probable cause deprive the plaintiff [in the wrongful attachment action] "of anything more than actual damages." *Talbott v. Great Western Plaster Co., supra*, at 17.

Count V and Count VI of defendants' counterclaim neither mentioned the fact that plaintiff had furnished an attachment bond nor sought recovery on it. Count V is an attempt to allege a claim for wrongful attachment, and Count VI is an attempt to allege a claim for malicious wrongful attachment. Although both counts alleged that the attachment had been dissolved by Judge Elliston's order of March 6, 1987, neither count alleged, and could not properly allege, that there had been any *prior and final* determination that the attachment was wrongful. On this appeal plaintiff, in point 3, seeks to challenge the order of March 6, 1987, dissolving the attachment. Although that challenge is rejected by this court, there will be no final determination that the attachment was improper until the proceedings on this appeal, including possible transfer to the supreme court, have ended.

In perfecting its appeal to this court, plaintiff gave an appeal bond. Section 521.420.2 reads, in pertinent part: "If the [appeal] bond is given by the plaintiff, it preserves the *attachment* in full force until the final determination of the appeal in the appellate court, or of the case upon a retrial in the trial court." (Emphasis added.) Rule 85.17 reads, in pertinent part: "... If there is an appeal, any *bond* in force in the attachment proceedings shall continue in force until determination of the civil action." (Emphasis added.)

The attachment and the attachment bond were still in force pending the outcome of the appellate process and, of course, they were in force at the time defendants filed

Count V and Count VI of the counterclaim. As the following Missouri cases will demonstrate, no cause of action for wrongful attachment lies so long as the attachment is still in effect.

In *Hembrock v. Stark*, 53 Mo. 588 (1873), a defendant in an attachment action sought to counterclaim for wrongful attachment. The court said, at p. 590: "If he was damaged by the attachment, he cannot set up such damages as a counter-claim. His remedy for damages growing out of the attachment is by suit on the attachment bond." The court held that the trial court improperly entertained the counterclaim.

In *Veale v. Bourne*, 224 Mo.App. 614, 30 S.W.2d 793 (1930), plaintiff filed suit on a note and sued out an attachment. Plaintiff dismissed the main action and the attachment was dissolved. Defendant, by motion, sought an allowance of attorney's fees. The court held that the attachment statutes "did not contemplate the taxing of defendant's attorney fees against plaintiff on mere motion of defendant in the original suit, when defendant should be successful. Defendant's remedy in such cases is by a separate suit on the bond for special damages." This holding was cited with approval in *State ex rel. Stevenson v. American Surety Co.*, 74 S.W.2d 1094, 1095 (Mo.App. 1934), and *Wilson v. Mass. Bonding & Ins. Co.*, 238 Mo.App. 882, 190 S.W.2d 944, 948 (Mo.App.1945).

In *Freymark v. McKinney Bread Co.*, 55 Mo.App. 435, 437 (1893), an action for *malicious* wrongful attachment, the court said such an action is "entirely analogous" to an action for malicious prosecution and that in the latter type actions "it has been held necessary to aver and prove that the prosecution complained of had ended in an acquittal." The court held that in an action for malicious wrongful attachment "the petition must show affirmatively that the attachment has terminated."

Significantly, *Freymark* was cited with approval in *Niedringhaus v. Zucker*, 208 S.W.2d 211 (Mo.1948), where plaintiff filed an ejectment action and defendant sought to file a counterclaim for malicious prosecution based upon "the petition in ejectment filed in this case." The court held that the counterclaim failed to state a cause of action because it failed to allege the termination of the alleged malicious action in favor of the counterclaiming defendant. The court also said that defendant could not truthfully allege that the alleged malicious action terminated in his favor because the ejectment petition was pending at the time the counterclaim was filed. The court said, at p. 211–212: "In other words, at the time the counterclaim was filed no cause of action had accrued for malicious prosecution action. It could not arise as long as [the petition in ejectment] was undisposed of and still pending."

In *Wright v. Mullen*, 659 S.W.2d 261 (Mo.App.1983), the court said:

"A *counterclaim* for the malicious prosecution of the petition against which the defendant counterclaims, therefore, complains of a litigation yet undetermined and so states no cause of action. *Niedringhaus v. Zucker*, 208 S.W.2d 211[1] (Mo.1948). A pleading which states no cause of action confers no subject matter jurisdiction a court can adjudicate, and is subject to dismissal. *Niedringhaus v. Zucker, supra*, 1. c. 212[3]. Such a defect is jurisdictional. *State ex rel. MFA Insurance Co. v. Murphy*, 606 S.W.2d 661, 663[2, 3] (Mo. banc 1980)." (Emphasis in original.)

In *United Farm Agency v. Howald*, 263 S.W.2d 889 (Mo.App.1954), plaintiff sued defendant for a real estate commission and sued out an attachment. Defendant filed a counterclaim for wrongful attachment but the trial court struck the counterclaim. Plaintiff prevailed in the main action and defendant appealed. In rejecting defendant's contention that the trial court erred in striking the counterclaim, the court said, at p. 893:

"Actions by attachment are under Chapter 521, RSMo 1949, V.A.M.S., and there is no provision for the award of damages for wrongful attachment in the trial of the attachment suit. Damages may be recovered only by a separate action and this after the defendant has prevailed. Sections 521.110, 521.420

RSMo 1949, V.A.M.S.; *Veale v. Bourne*, 224 Mo.App. 614, 30 S.W.2d 793."

There may be circumstances when a separate action for wrongful attachment may be filed during the pendency of the appeal of the main action to which the attachment proceeding was ancillary. Such was the situation in *McClelland v. Dougherty*, 204 S.W. 201 (Mo.App.1918), where the main action resulted in a judgment in favor of the defendant whose property had been attached. The trial court dissolved the attachment. Although plaintiff appealed, he made no objection to the dissolution of the attachment. Thus there had been a final and prior determination of the attachment proceeding favorable to the attachment-defendant before the separate action for wrongful attachment was filed, even though the main action itself was in the process of appeal. The court held that the separate action for wrongful attachment was not brought prematurely.[4]

Although no statutory ground existed for the issuance of the writ of attachment, as pointed out in the discussion of plaintiff's third point, plaintiff had the right by this appeal to challenge the correctness of Judge Elliston's order dissolving the attachment. Until that issue was resolved, it could not properly be claimed by the defendants that the attachment was wrongful.

Defendants argue, however, that plaintiff waived its right to challenge Count V and Count VI because plaintiff failed to state in its reply or in a motion directed to the counterclaim that the counterclaim "is one which cannot be properly interposed in this action." Defendants base their arguments on Rule 55.27, and specifically Rule 55.27(a)(12) and Rule 55.27(g)(1).

Rule 55.27(a), as applicable here, requires that every defense, in law or fact, to a counterclaim, be asserted in the reply to a counterclaim denominated as such, except that 12 enumerated defenses may, at the option of the pleader, be made by motion.

Those defenses include "... (6) failure to state a claim upon which relief can be granted," and "(12) that the counterclaim ... is one which cannot be properly interposed in this action."

Rule 55.27(g)(1) provides, in pertinent part, that a defense that the counterclaim is one which cannot be properly interposed in this action is waived if it is neither made by motion under Rule 55.27 nor included in the reply. On the other hand, as previously stated, Rule 55.27(g)(2) permits plaintiff to raise the defense that the counterclaim failed to state a claim upon which relief can be granted at any time during the course of the proceedings, including "on appeal."

As previously pointed out, the prior and final determination of an attachment proceeding in favor of the attachment-defendant is an element of his cause of action for wrongful attachment, whether malicious or not, and thus neither Count V nor Count VI stated a claim for relief.

To be a compulsory counterclaim within the meaning of Rule 55.32(a) there must be a *claim*, and the same is true of a permissive counterclaim under Rule 55.32(b). Rule 55.32(d) authorizes the filing, with the permission of the trial court, of a "counterclaim by supplemental pleading," which constitutes "a *claim* which either matured or was acquired by the pleader after serving his pleading." Neither Count V nor Count VI alleges "a claim." Thus neither alleges "a counterclaim." There is no merit in defendants' argument that Rule 55.-27(a)(12) and Rule 55.27(g)(1) prevent plaintiff, on this appeal, from contending that Count V and Count VI failed to state a claim upon which relief can be granted.

Similarly, for the reasons stated in the preceding paragraph, Rule 55.06(b) is of no aid to defendants. That rule states, in pertinent part: "Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to conclusion, the two claims may be joined in a single action...." Cf. MAI 23.07 [1980 Revision].

---

**4.** In some jurisdictions a claim for wrongful attachment may be asserted as a counterclaim in the action in which the attachment was issued. See 85 A.L.R. 644 (May or must claim for damages from wrongful seizure of property be interposed in action or proceeding in which such seizure was made). See 7 C.J.S. Attach. § 398, p. 743.

Plaintiff's fifth point is that the trial court erred in awarding defendants attorney's fees in the amount of $1,277.40 under § 514.205.1 "for the reason that no evidence supports such [an award]." Plaintiff's fifth point has not been preserved for appellate review. Contrary to the requirement of Rule 84.04(c), the statement of facts portion of plaintiff's brief as appellant makes no mention of the award of $1,277.40 or any of the facts or pleadings leading to that award. This court has made a gratuitous examination of those facts and pleadings and no plain error appears. Plaintiff's fifth point has no merit.

Plaintiff's sixth point is: "The trial court erred in failing to strictly comply with the statutes applicable to attachment proceedings because the final judgment failed to include a disposition of the writ of attachment."

Section 521.420.2 reads, in pertinent part:

"Upon the trial of the case upon the merits, which shall be on the record, there shall be incorporated in the judgment rendered in the cause, as a part of such judgment, a finding and judgment either that the attachment is dissolved and the sureties thereon released, or that the attachment is sustained, the finding to be in accordance with the action of the court theretofore taken on the motion to dissolve the attachment...."

Rule 85.15 reads:

"The final judgment shall include any findings which the court has made on any motion to dissolve the attachment."

The trial court, on July 28, 1987, entered a purported judgment which is the one attacked by plaintiff's sixth point. That judgment made no mention of the attachment or its dissolution. Thus it failed to comply with § 521.420.2 and that failure invalidated it. *Fries v. First Community State Bank*, 661 S.W.2d 664, 667 (Mo.App. 1983). No such omission exists in the amended judgment, entered September 9, 1987, on which this appeal is based. Plaintiff's sixth point has no merit.

Two other points raised by plaintiff are now moot.

Since defendants may elect to pursue their remedy on the attachment bond or to seek relief otherwise, the judgment should be modified so as to reinstate the attachment bond filed by plaintiff. This court may make that modification. Rule 84.14.

Defendants' motion for frivolous appeal is denied.

That portion of the judgment finding the issues in favor of defendants and against the plaintiff on Count V of defendants' first amended counterclaim, and awarding damages thereon, is reversed; that portion of the judgment finding the issues in favor of defendants and against the plaintiff on Count VI of defendants' first amended counterclaim, and awarding damages thereon, is reversed. All portions of the judgment referring to the attachment proceeding or any part of it are deleted and, in lieu thereof, the judgment is hereby modified to include the following: "The attachment heretofore issued at the instance of plaintiff is hereby dissolved for the reason that the court finds that no statutory ground existed for its issuance. The attachment bond heretofore filed herein by plaintiff, together with the obligation of the sureties thereon, is hereby reinstated to full force and effect." In all other respects the judgment is affirmed.

It is so ordered.

HOLSTEIN, C.J., and CROW, J., concur.

HOGAN, MAUS and PREWITT, JJ., recused.